Derek S. Khanna (Cal. Bar No. 308563)
706 Tesoro Road
Monterey, CA 93940
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com

Mark I. Bailen (D.C. Bar No. 459623), *Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No. 4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff, Kurraba Group Exposed*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **Kurraba Group Exposed**, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>**Kurraba Group Pty Ltd,** a New South Wales, Australia, private limited company<br><br>**Nicholas "Nick" Mark Smith**, an individual residing in New South Wales, Australia,<br><br>Defendants. | Case No. _____<br><br>**PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

KURRABA GROUP EXPOSED VERIFIED COMPLAINT

1                                  **I. INTRODUCTION**

2          1.      This action seeks to protect core First Amendment speech, speech from foreign

3    censorship.  Plaintiff Kurraba Group Exposed ("Plaintiff" or "KGE"), a San Francisco-based

4    online platform and unincorporated association, brings this suit against Defendants Kurraba

5    Group Pty Ltd and Nicholas "Nick" Mark Smith to obtain a declaratory judgment that content

6    posted by KGE's members on its platform, which investigates and criticizes Defendants'

7    property development activities, is not defamatory under U.S. law and constitutes protected

8    speech on matters of public concern. KGE asserts these claims both on its own behalf as an

9    association whose platform has been suppressed, and on behalf of its members whose First

10   Amendment rights have been violated.  Plaintiff further seeks an injunction preventing

11   Defendants from enforcing or inducing the enforcement of an Australian court order that has

12   been used to suppress Plaintiff's platform, including an order barring any de-indexing, de-

13   prioritization, or removal of Plaintiff's platform from search results by Google based on that

14   foreign judgment.  This relief is necessary to ensure that a foreign defamation ruling, obtained

15   under a plaintiff-friendly Australian law, cannot be used to silence an entire platform for

16   protected expression or infringe upon the First Amendment rights of KGE's members.

17         2.      Defendants engaged in what amounts to libel tourism, suing the wrong person

18   in a foreign forum with weaker free-speech protections, and requested an *ex parte* order to

19   silence criticism they could not restrain under U.S. law.  An Australian court, applying

20   Australian defamation and privacy law, issued an *ex parte* interim injunction that, although not

21   issued against Plaintiff or any of Plaintiff's employees or agents, is being enforced to gag

22   Plaintiff's speech and order the removal of Plaintiff's content from the internet.  Upon the

23   Defendants' request, and by supplying the Australian Court order made against Mr. Williams,

24   Google LLC ("Google") has, on information and belief, geo-blocked or otherwise de-

25   prioritized the Plaintiff's website from Australian search results and otherwise removed or de-

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    prioritized search results globally, effectively hiding the Plaintiff's reporting from its primary

2    audience. (Exhibit 1). These actions contravene the First Amendment and are unenforceable

3    in the United States under 28 U.S.C. §§ 4101–4105 (The SPEECH Act). Plaintiff therefore

4    asks this Court (1) to declare that Defendants' actions to censor KGE's publications violated

5    KGE's First Amendment right to free speech and that Defendants' Australian judgment or

6    orders are repugnant to U.S. free speech principles and unenforceable here, and (2) to enjoin

7    Defendants, and any acting in concert with them, from taking further steps to censor Plaintiff's

8    website. Such measures are essential to prevent the extraterritorial imposition of foreign

9    censorship that directly conflicts with U.S. jurisprudence, including landmark cases like *New

10    York Times Co. v. Sullivan*, which demand heightened protections for speech on public matters.

11                              **II. PARTIES**

12          3.    **Plaintiff Kurraba Group Exposed (KGE)**: Plaintiff is an unincorporated

13    association that operates an online platform for community activists based in California. Under

14    California law, an unincorporated association may sue or be sued in its own name. *See* Cal.

15    Code Civ. Proc. § 369.5(a). KGE brings this action both in its own right and on behalf of its

16    members pursuant to the doctrine of associational standing. KGE operates an interactive

17    computer service platform where association members independently post investigative

18    content, factual reports, and commentary regarding Defendant Kurraba Group and its

19    Executive Director, Nicholas "Nick" Mark Smith, and their real estate development projects

20    and business practices, particularly the controversial proposed development at 100 Botany

21    Road in Sydney, Australia. The platform's mission is to provide a forum where members can

22    expose alleged corruption, misconduct, and irregularities in these development projects and

23    demand transparency and accountability for matters affecting the public interest. Between five

24    and ten association members have independently contributed content to the platform, each

25    exercising their individual First Amendment rights. KGE maintains the technical infrastructure

1   for this platform through servers located in the United States, with administrative operations

2   based in San Francisco, California.  While individual members post content at their own

3   discretion and responsibility, KGE as an association suffers distinct injury when the entire

4   platform is suppressed, frustrating its mission and denying members their chosen forum for

5   protected expression.  An Australian community advocate, Michael Williams, has been

6   publicly associated with opposing Kurraba's project.  He is not, however, the operator of the

7   KGE platform nor responsible for content posted by KGE members.  The platform is

8   maintained by U.S.-based association members, a fact which was expressly conveyed to

9   Defendants' Australian counsel before they proceeded against Mr. Williams.

10      4.  **Associational Standing**: KGE has standing to assert claims on behalf of its

11  members because: (a) individual members of KGE have been injured by the suppression of

12  their speech through the de-indexing and blocking of the platform where they post content; (b)

13  the interests KGE seeks to protect, freedom of expression on matters of public concern and the

14  right to maintain a platform for such expression, are germane to the organization's purpose; and

15  (c) neither the claims asserted nor the relief requested requires the participation of individual

16  members in this lawsuit. The suppression of the KGE platform injures both the association's

17  ability to fulfill its mission and the individual members' First Amendment rights to speak and

18  be heard on matters of public importance.  Individual members who post content to the platform

19  do so in their personal capacities and retain sole responsibility for their expressions, while KGE

20  seeks relief that will benefit all members by restoring platform access without requiring

21  disclosure of member identities or individual participation in this proceeding.  By proceeding

22  via associational standing, KGE ensures its contributors can continue speaking under the cloak

23  of pseudonymity, free from fear of retaliation or being hauled into court.  This arrangement

24  honors the First Amendment tradition that authors and advocates may decide 'whether or not

25  to disclose [their] true identity' without government interference.

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1      5.    **Defendant Kurraba Group Pty Ltd:** Kurraba Group is an Australian private

2  company (ACN 662 323 695) with its principal place of business at Level 15, 124 Walker

3  Street, North Sydney NSW 2060, Australia.  Kurraba Group is a property development firm

4  and the proponent of a planned development project at 100 Botany Road in the

5  Waterloo/Alexandria area of Sydney.  The Kurraba Group has been at the center of a high-

6  profile local controversy over the legitimacy and impact of this project, drawing scrutiny from

7  community members, journalists, and even referrals to regulators.  Kurraba Group, through its

8  officers and agents, initiated legal proceedings in Australia to suppress Plaintiff's critical

9  reporting about the company.  It has purposefully directed actions toward the United States in

10  connection with that effort, including causing U.S.-based internet services to block content,

11  such that it is subject to personal jurisdiction in this Court, as further alleged below.

12      6.    **Defendant Nicholas "Nick" Mark Smith**: Nick Smith is a resident of 40

13  Curtis Road, Balmain, NSW 2041, Australia.  He is the Chief Executive Officer and sole

14  director of Kurraba Group.  Smith was a plaintiff with Kurraba Group in the Australian

15  defamation and privacy lawsuit targeting Plaintiff's website and its contributors.  In addition,

16  Smith personally pursued other legal measures to silence critics, including an Apprehended

17  Violence Order against KGE contributor Michael Williams, as detailed herein.  Smith has

18  purposefully availed himself of the U.S. forum by targeting U.S.-hosted content and leveraging

19  U.S. internet platforms, such as Google, to enforce censorship, thereby subjecting himself to

20  this Court's jurisdiction.  His direct involvement in these cross-border suppression efforts

21  further underscores the intentional nature of the harm inflicted on U.S.-protected speech,

22  warranting this Court's oversight.

23                **III. JURISDICTION AND VENUE**

24      7.    **Subject Matter Jurisdiction**: This Court has federal question jurisdiction

25  under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1   Declaratory Judgment Act (28 U.S.C. § 2201), the SPEECH Act (28 U.S.C. §§ 4101–4105),

2   and implicate rights under the First Amendment to the U.S. Constitution. Specifically, Plaintiff

3   seeks declaratory and injunctive relief to prevent enforcement of that foreign judgment in a

4   manner contrary to federal law.  Diversity, while unnecessary, is also present, as this matter

5   involves Plaintiff, who is an operator and a citizen of California, and Defendant Kurraba Group,

6   which is domiciled in Australia; Defendant Smith is a citizen of Australia (and the amount in

7   controversy, measured by the value of the speech rights at stake, exceeds $75,000).

8       8.      **Personal Jurisdiction**: Defendants Kurraba Group and Smith have sufficient

9   contacts with California. Defendants expressly targeted a U.S.-hosted website, its X.com

10  (Twitter) social media account, and its U.S. publishers by attempting to have content removed

11  and by invoking a foreign court order to affect U.S. internet platforms. (Exhibit 2).  Defendants

12  knew that the Plaintiff's website was hosted in California, as the Plaintiff, KGE, had advised

13  them multiple times before doing so that this was the case. And Defendants further intended

14  their actions to cause censorship effects here, including having Google LLC, a California-based

15  company, de-index content.  Defendants are amenable to service under 28 U.S.C. § 4104(b) as

16  they can be found and served in Australia, with the eventual enforcement of U.S. judgments

17  possible against their assets or via actions they may take in the U.S.

18      9.      **Venue**: A substantial part of the events giving rise to the claim occurred in this

19  District: the harm to Plaintiff's rights is being felt here, as Plaintiff's website is hosted and

20  published from this District, and Google implemented the de-indexing from within this District.

21  Moreover, Defendant Google resides in this District, and Defendant Smith and Kurraba, as

22  foreign defendants, may be sued in any judicial district.

KURRABA GROUP EXPOSED VERIFIED COMPLAINT

1      ### IV. FACTUAL BACKGROUND

2      *A. Local Controversy and Plaintiff's Public-Interest Reporting*

3      10.      Defendant Kurraba Group is the proponent of a major development project to

4      construct a commercial campus in Sydney.  From the project's inception, residents, experts,

5      and officials have raised alarms about the development's legality and community impact.  A

6      prominent law firm, Gilbert + Tobin, issued an opinion warning the City of Sydney that

7      approving the project without considering its effects combined would be "legally unsound" and

8      potentially voidable.  Additionally, commitments to include affordable housing in the

9      development were quietly removed, angering residents who saw this as a betrayal of promised

10     public benefits.  In May 2025, concerns about a suspicious land sale linked to the project

11     prompted a referral to the New South Wales Independent Commission Against Corruption

12     (ICAC).  Too afraid to speak publicly due to the chilling effect of Kurraba Group and Nick

13     Smith's actions, tens of local citizens have contacted KGE with their own stories of misconduct

14     and threats by Kurraba Group and its founder, Nick Smith.  This widespread fear highlights

15     the broader public harm caused by Defendants' tactics, which not only suppress individual

16     voices but also deter collective accountability in matters of significant civic importance.

17     11.      Amid this controversy, a community activist, Michael Williams, emerged as a

18     vocal critic of Kurraba's project.  Williams, who leased a property on the development site's

19     block, organized opposition through formal objections and public meetings.  At the same time,

20     activists in the United States took notice, formed the KGE (now associated), and jointly created

21     the "Kurraba Group Exposed" website.  The KGE website publishes detailed investigative

22     pieces that incorporate evidence such as emails, plans, and corporate records to shed light on

23     alleged misconduct by the Kurraba Group and Nick Smith. (Exhibit 3).

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    *B. Defendants' Efforts to Silence Criticism, Australian Lawsuits and Orders*

2        12.        Rather than addressing the substantive issues raised by community members,

3    Kurraba Group and Nick Smith resorted to aggressive legal tactics to silence their critics.  In

4    mid-2025, Smith filed an application for an Apprehended Personal Violence Order (APVO), a

5    protective order under Australian law similar in function to a restraining order, against Michael

6    Williams, claiming he feared for his safety due to Williams' activism.  There was no evidence

7    of any actual violence or personal threats by Williams; his conduct was limited to public

8    advocacy and legal protest, not threats or violence," making the APVO request highly suspect.

9    Observers noted that using an AVO in a development dispute was virtually unprecedented and

10    warned that courts frown on such vexatious misuse of protective orders.  As of the filing of this

11    Complaint, it is our understanding that the APVO matter has not resulted in any finding against

12    Williams; its primary significance here is as context illustrating Defendants' willingness to

13    employ any legal weapon to shut down criticism.  This pattern of abusing legal processes not

14    only chills speech but also erodes trust in judicial systems, further emphasizing the need for

15    U.S. courts to intervene against such extraterritorial overreach.

16        13.        In late 2025, the Defendants escalated their attack on the Plaintiff's speech to a

17    more direct level: they launched a defamation lawsuit in Australia aimed at forcing the KGE

18    website offline.  On or about September 2025, Kurraba's attorneys sent "Concerns Notice"

19    letters under Australian defamation law, accusing the KGE blog of "seriously defaming"

20    Kurraba Group and Nick Smith and blaming its posts for causing "serious harm," including

21    allegedly scaring away a $3 million investor.  Kurraba's lawyers insisted that the site delete all

22    its content, cease any further commentary about Kurraba or Smith, and presumably pay

23    damages, under threat of an immediate lawsuit.  These demands represent a blatant attempt at

24    prior restraint, which is presumptively unconstitutional under U.S. law, as established in *Near*

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1   *v. Minnesota*, 283 U.S. 697 (1931), and highlight the incompatibility of Australian procedures

2   with American free speech norms.

3        14.    Defendants' attorneys addressed these legal threat letters to Michael Williams

4   in Sydney, apparently assuming he was the operator of "KurrabaGroup.Exposed" and

5   "x.com/kurrabagroup", and not to the actual U.S. website operators.  However, Defendants did

6   send Plaintiff a copy of their letters to Plaintiff's email address KurrabaGroup@proton.me.  In

7   response, the actual site owner, several California residents, promptly informed Defendants'

8   lawyers of their mistake: "This is not Michael Williams, nor do I have any involvement with

9   him beyond receiving emails about your development," wrote the site's operator, who offered

10  proof of the plaintiff's U.S. identity.  Defendants were put on clear notice that the website was

11  a U.S.-based publication run by U.S. persons, and that they had misidentified a local

12  community advocate as the website's owner.  Despite this explicit knowledge, Defendants

13  proceeded, demonstrating bad faith and a calculated disregard for due process, which further

14  invalidates any claim to enforceability under U.S. standards.

15       15.    Rather than seeking preliminary discovery to assess the true identity of the

16  website owner and eager to get some form of order to remove the website, Kurraba and Smith

17  filed suit against Mr. Williams as the defendant.  On October 2, 2025, *Kurraba Group Pty Ltd*

18  *& Anor v. Michael Williams* was listed in the New South Wales District Court before Judge

19  Judith Gibson.  This lawsuit accused Williams of defamation, relating to 15 distinct

20  publications on the KGE site and included claims of "serious invasion of privacy" and

21  "intimidation", the latter apparently based on allegations that Williams had tried to extort

22  money from Smith by threatening to oppose the project.  At no time during the *ex parte*

23  proceeding did Kurraba or Smith disclose to the Australian court that KGE disputed that

24  Williams owned or operated the site.  Interim orders were soon granted in that case: Judge

25  Gibson, at an ex parte stage, issued a suite of injunctions effectively gagging Mr. Williams and,

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    by extension, the KGE website, pending trial.  According to the published decision (Exibit 4),

2    the court enjoined Williams from "publishing any documents … by way of posting articles on

3    the Internet … referring to Mr[.] Smith and Kurraba," and further required Williams "within

4    two days" to "take all steps to remove from the Internet … any website, article, advertisement

5    or document referring to or identifying Mr[.] Smith and Kurraba." The court also barred

6    Williams from "repeating or continuing to publish" any such materials and from "inciting or

7    encouraging any person" to engage in the same.  These orders were to remain in effect until the

8    final determination of the proceeding.  In short, the Australian court imposed a blanket prior

9    restraint, prohibiting any reference to Defendants by the website or anyone acting in concert

10    with Williams.  This sweeping injunction, issued without adversarial proceedings, contravenes

11    basic U.S. due process requirements under the Fifth and Fourteenth Amendments, rendering it

12    fundamentally unenforceable here.

13         16.    Judge Gibson's interim decision (citation: [2025] NSWDC 396, *see also* Ex. 4)

14    was notable as the first published ruling under Australia's new statutory privacy tort.  In

15    granting the injunctions, the court found that Mr. Williams had no legitimate journalistic

16    purpose and was acting out of malice or "extortion," rather than in the public interest.  The

17    judge found that wedding photographs of Mr. Smith, which had been posted on the KGE site

18    ostensibly to illustrate Smith's character, were "private" and that Williams's use of them was

19    highly offensive and not newsworthy.  KGE notes that all photos were sourced from public

20    websites, including a public album produced by a photographer.  None of the images were

21    sourced from social media accounts or other private methods.  The court further opined that

22    Mr. Smith and his wife were "not public figures" and thus entitled to greater privacy.  In the

23    judge's view, Williams's conduct did not qualify for any "journalism" exemption in the law.

24    While these findings were *ex parte* and preliminary, the court concluded that the Plaintiff's

25    publications were likely unlawful under Australian defamation and privacy law.  Kurraba and

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1  Nick Smith took immediate action to halt that speech.  However, these conclusions ignore the

2  public domain status of the materials and fail to account for U.S. standards, where

3  newsworthiness in public controversies often outweighs privacy claims.

4       17.      In the U.S., such a lawsuit would likely be dismissed early under anti-SLAPP

5  laws or on free speech grounds, as the content involves a matter of public concern and lacks

6  evidence of actual malice.  Moreover, the interim injunction was issued *ex parte*, without notice

7  to or participation by Williams, let alone the U.S.-based bloggers who actually run the site,

8  effectively functions as a prior restraint on speech that fetters the rights of non-parties to the

9  proceedings.  This *ex parte* order deprives the actual publishers of any opportunity to be heard,

10  violating fundamental due process and amplifying the chill on protected expression by

11  extending its reach to uninvolved speakers through broad language barring "inciting or

12  encouraging" others.  This approach not only flouts international comity but also invites U.S.

13  judicial repudiation under the SPEECH Act, designed precisely to counter such abuses.

14  *C. Google's Blocking or De-Prioritizing of Plaintiff's Website*

15       18.      In the wake of Judge Gibson's injunction, Defendants have attempted to spread

16  the reach of that gag order to the global internet.  Upon obtaining the Australian court's order,

17  the Defendant, directly or through counsel, notified Google, the ubiquitous worldwide search

18  engine, and demanded that Google de-index or remove references to the Plaintiff's website.

19  Google complied to the extent of the Australian market: on October 20, 2025, Google's legal

20  department informed the Plaintiff that Kurraba Group and Nick Smith had lodged a complaint,

21  and as a result, their website is suppressed in Australia.  Although Google claims the

22  suppression is only occurring in Australia, search results for KGE's website have largely

23  disappeared globally for key search terms such as "Kurraba Group", "Kurraba Group Nick

24  Smith", "Kurraba Nick Smith", and "Kurraba".  In practical terms, this means that Google will

25  not display (or significantly downrank) "KurrabaGroup.Exposed" and "x.com/kurrabagroup"

1    pages in search results for these critical terms, effectively making the site invisible to users

2    searching for information about Kurraba or Nick Smith. Plaintiffs admit that if you type

3    "Kurraba Group Exposed" or "KurrabaGorup.exposed" the site still comes up but Plaintiff's

4    traffic originated mainly from individuals doing research on the developers and its CEO,

5    "Kurraba Group" and "Nick Smith."  Kurraba Group Exposed announced this development

6    publicly, noting that "Kurraba Group & Nick Smith are so afraid of our reporting they have

7    now had the content banned by Google in Australia." Defendants' success in pressuring Google

8    to block, or at least geo-block, the site was also reported on KGE itself, which described the

9    alleged geo-blocking of "KurrabaGroup.Exposed" and "x.com/kurrabagroup" following

10   pressure from Nick Smith and Kurraba Group, resulting in the site being "obscured from

11   domestic visibility" in Australia.  However, since publication, KGE has noted that the website

12   appears to have disappeared globally.  This *de facto* global suppression demonstrates how

13   foreign orders can, inadvertently or intentionally, achieve worldwide censorship, contravening

14   U.S. policy favoring an open internet, as articulated in 47 U.S.C. § 230.

15         19.    This de-indexing severely hampers the Plaintiff's ability to reach its intended

16   audience and participate in the public debate.  Most Australian members of the public (and

17   media) rely on Google to find news and commentary; if Plaintiff's site is absent from search

18   results, the information is effectively hidden from the very community it aims to inform.  The

19   harm is ongoing and irreparable: every day that the site remains suppressed, Defendants'

20   narrative about their project goes unchallenged in the forum most accessible to the public, and

21   Plaintiff's voice is silenced on matters of civic importance.  The Plaintiff reasonably fears that

22   the Defendants may further leverage the Australian orders to pressure other intermediaries,

23   such as web hosting companies or domain registrars, to take down or block the content, given

24   that the injunction purports to require the removal of the website from the Internet.  Indeed, the

25   injunction's broad language could be read to compel Mr. Williams to request takedowns from

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    any platform carrying KGE content.  Suppose Defendants attempt to enforce it in that manner.

2    In that case, they will likely target U.S.-based service providers, since the site is hosted in the

3    U.S., which raises the prospect of additional conflicts with U.S. law and jurisdiction.  Such

4    escalation would compound the irreparable injury, as recognized in *Elrod v. Burns*, where even

5    brief deprivations of speech rights constitute harm warranting immediate relief. 427 U.S. 347

6    (1976).

7        20.    Since Google's blocking and de-ranking took effect, Plaintiff's website no

8    longer appears in U.S. search results for "Kurraba," "Kurraba Group," "Kurraba Group Nick

9    Smith," "Kurraba Nick Smith," or related queries that previously ranked in the top five.  This

10   blackout, arriving at a critical stage of the project, inflicts immediate and irreparable harm:

11   residents, who are confronting time-sensitive administrative and judicial appeal windows, are

12   deprived of the countervailing facts necessary to understand and exercise their rights, and

13   prospective investors are denied complete and impartial information material to their

14   investment decisions.  Before the suppression, several U.S. investors contacted Plaintiff to say

15   that access to Plaintiff's reporting provided a fuller picture of Kurraba Group and Mr. Smith's

16   past failures.  Traffic to the Plaintiff's website has declined by more than 90% since the search

17   restrictions were implemented, reflecting a drastic loss of audience, influence, and the ability

18   to inform the public, resulting in injuries that are not compensable by monetary damages and

19   that compound with each day of suppression.

20       21.    In short, through the Australian court's preliminary rulings and the Defendants'

21   actions, the Plaintiff's constitutionally protected speech has been muzzled beyond Australia's

22   borders, and further enforcement is looming.  Plaintiff now turns to this Court to prevent a

23   foreign defamation regime from dictating what Americans can lawfully say and read about a

24   matter of public interest.  U.S. law does not permit such an outcome: our First Amendment and

25   federal statutes squarely reject the enforcement of foreign libel judgments that do not conform

1    to American free speech standards.  As detailed below, the Australian defamation action and

2    injunction would likely not withstand scrutiny under U.S. law; they represent precisely the kind

3    of speech-suppressive judgment that Congress, through the SPEECH Act, has made

4    unenforceable in the United States.  This case epitomizes the "libel tourism" Congress sought

5    to eradicate, necessitating robust judicial protection to preserve the integrity of U.S. speech

6    freedoms.

7    **V. CAUSES OF ACTION**

8

9    **COUNT I: DECLARATORY JUDGMENT**

10    (FIRST AMENDMENT PROTECTION & UNENFORCEABILITY OF FOREIGN
11    DEFAMATION JUDGMENT) 28 U.S.C. § 2201; SPEECH ACT, 28 U.S.C. §§ 4101-4104

12        22.    **Actual Controversy**: An actual, justiciable controversy exists between Plaintiff

13    and Defendants regarding the infringement on Plaintiff's First Amendment right to free speech

14    and the enforceability of the Australian court's orders concerning KGE's publications.

15    Defendants have obtained a preliminary court ruling that the Plaintiff's website content is

16    unlawful, defamatory, and a violation of privacy, and must be removed worldwide.  Plaintiff,

17    by contrast, maintains that its content is truthful or constitutionally protected speech on matters

18    of public concern, and that any foreign judgment purporting to suppress or punish it is

19    repugnant to the First Amendment and U.S. law.  Because a foreign "defamation judgment or

20    any similar offense" has been entered against Plaintiff, at least in interim form, Congress has

21    expressly found that a sufficient controversy exists for a U.S. declaratory judgment action.

22    Plaintiff faces a concrete injury from the ongoing partial enforcement of that foreign judgment,

23    e.g., the Google de-indexing and self-censorship compelled by fear of further enforcement,

24    which this Court can redress through declaratory and injunctive relief.  This controversy is ripe

25    and immediate, as the effects of the suppression are already manifest.

KURRABA GROUP EXPOSED VERIFIED COMPLAINT

23.    **Protected Speech Under U.S. Law**: The statements and content published on "KurrabaGroup.Exposed" and "x.com/kurrabagroup," whether authored by Plaintiff or by association members of KGE, involve matters of undeniable public interest: namely, the integrity of a significant urban development project, the conduct of a property developer and his company in the regulatory process, and potential impacts on the community, including allegations of corruption, misuse of public land, and false promises of public benefits. In the United States, speech addressing such matters lies at the very core of the First Amendment's protections.  The material published on KGE's platforms consists of factual statements and substantiated allegations, or expressions of opinion based on disclosed facts, made by individual users exercising their constitutional rights.  These posts and articles cite internal documents, identify discrepancies in public records, and report on official proceedings such as the ICAC referral and legal opinions, all of which are protected as either factual reporting or opinion commentary.

24.    Defendants, as participants in a high-profile development and as entities actively soliciting public approvals and investment, are at least limited-purpose public figures within the meaning of U.S. defamation law.  Accordingly, under the standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny, they bear the burden of proving that the challenged statements were both false and made with "actual malice", that is, with knowledge of falsity or reckless disregard for the truth.  Defendants cannot meet, and has not met, this burden.  And, significantly, they have not tried.  Defendants have not challenged any statement made by KGE or its members in the United States, where the burden of proof would be on them to prove that the statements are false and defamatory. Nor is it likely they would try.  Plaintiff's and its members' factual allegations are substantially true, and to date, Defendants have not produced any evidence that any statement by KGE or its members is false. The Australian court's characterizations, for example, that Plaintiff's motive was extortion

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1  rather than journalism, do not speak to falsity under U.S. standards.  Even if the speakers

2  harbored ill will, U.S. law makes clear that "even vehement, caustic, and unpleasantly sharp

3  attacks" on public figures remain protected absent actual malice.  See *Sullivan*, supra.  This

4  protection extends to opinions and rhetorical hyperbole, as reaffirmed in *Milkovich v. Lorain*

5  *Journal Co.*, 497 U.S. 1 (1990).

6      25.    To the extent that individual users contributed to the discussion, KGE qualifies

7  as an interactive computer service provider under 47 U.S.C. § 230 and thus cannot be treated

8  as the publisher or speaker of information provided by others. Both KGE and its members

9  possess an independent First Amendment interest in maintaining their platform for discussion

10  on matters of public concern, and any suppression of that platform or its search visibility

11  violates those constitutional rights, regardless of whether KGE is regarded as a publisher or

12  a neutral platform.

13      26.    Furthermore, many statements on the website are value-laden opinions or

14  conclusions, for example, referring to Defendants' actions as "a deceptive land grab" or

15  describing their legal tactics as "a temper tantrum" in one commentary.  Such statements are

16  not actionable as defamation here because they are not provably false assertions of fact,

17  especially in the context of disclosed supporting facts.  In short, under U.S. defamation

18  doctrines, Plaintiff's speech would either be non-defamatory, privileged, or barred by multiple

19  First Amendment safeguards, including the requirements of substantial falsity, actual malice,

20  if applicable, and the rule against general prior restraints on speech.

21      27.    **First Amendment Protection for Anonymous Speech**:  The publications by

22  KGE's members are not only substantively protected as truthful speech on matters of public

23  concern but are also protected by the First Amendment's guarantee of anonymous speech.

24  Speakers have the right to engage in public debate without identifying themselves, a principle

25  the Supreme Court deems an "honorable tradition of advocacy and of dissent".  *See McIntyre*

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1  *v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 356 (1995).  Here, KGE's platform enabled

2  community watchdogs to criticize a powerful developer under pseudonyms, precisely the kind

3  of anonymous pamphleteering that the First Amendment has sheltered since the founding era.

4  The foreign injunction obtained by Defendants strikes at this tradition: it purports to silence

5  speech posted by unnamed Americans who never had a chance to appear or defend their rights

6  in the Australian proceeding.  Enforcing that gag order in the U.S., directly or indirectly, would

7  eviscerate the speakers' constitutional anonymity.

8      28.    **Foreign Law Is Less Protective**: The law applied in the Australian proceeding

9  provides far weaker protections for speech and press than U.S. law.  New South Wales

10  defamation law does not require proof of "actual malice" for public-interest speech.  Indeed,

11  the Australian court expressly noted that Mr. Smith and his wife were "not public figures,"

12  implying that no heightened fault standard was applied.  In Australia, as in other English

13  common law jurisdictions, the burden of proving truth rests with the defendant, whereas in

14  American courts, the plaintiff must prove falsity as part of the prima facie case.  This allocation

15  of burden makes it significantly easier to label speech "defamatory" abroad than it would be

16  here.  Moreover, Australian law presumes damages upon a finding of defamation, without

17  requiring proof of actual harm, in contrast to U.S. requirements for concrete injury in speech

18  cases.

19      29.    Additionally, Australia's new privacy tort (Part 2 of Schedule 2 of the *Privacy*

20  *Act 1988 (Cth)*)[1] recognizes a broad right to sue for "misuse of personal information," which

21  has no counterpart in U.S. law, especially when the information relates to a matter of public

22  concern.  For instance, the Australian court found Mr. Smith's wedding photographs (Exhibit

---

[1] *The Privacy Act of 1988* (Cth) is available at
https://classic.austlii.edu.au/au/legis/cth/consol_act/pa1988108/sch2.html.

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    5), which are publicly available on websites across the internet,[2] to be private and ordered their

2    dissemination to be enjoined.  In the U.S., by contrast, the publication of photos, absent a

3    specific intellectual property right or highly offensive disclosure of purely private facts, would

4    generally be protected, if relevant to a newsworthy controversy or to the subject's public

5    conduct.  The net effect is that speech that is actionable in Australia may well be fully protected

---

[2] *Kurraba Group*, https://kurrabagroup.com/company/ (last visited Oct. 27, 2025); image: https://kurrabagroup.com/upload/team/p2.jpg. *Life Sciences Real Estate Summit*, https://lifesciencesrealestatesummit.com/ (last visited Oct. 27, 2025); images: https://lifesciencesrealestatesummit.com/wp-content/uploads/Nick-Smith.png; https://lifesciencesrealestatesummit.com/wp-content/uploads/Cover-1.png; https://lifesciencesrealestatesummit.com/download-program/ (last visited Oct. 27, 2025); images: Sarah Kay, *In Conversation with Sarah Kay, Director, Sydney Studio Chair, Woods Bagot*, https://www.woodsbagot.com/global-studio/news/studio/in-conversation-with-sarah-kay-director-sydney-studio-chair/ (last visited Oct. 27, 2025); image: https://wpassets.s3.ap-southeast-2.amazonaws.com/wp-content/uploads/2023/03/09062518/pca.jpg. Lisa Mountford, *Love Letters: Lisa Diagnosed 2018*, *National Breast Cancer Foundation (Austl.)*, https://nbcf.org.au/love-letters/lisa-diagnosed-2018/ (last visited Oct. 27, 2025); image: https://nbcf.org.au/wp-content/uploads/2020/02/Lisa-Mountford.jpg. *Maria & Dom at Semara Beach House – Bali Wedding Destination*, *Diktat Photography*, https://www.diktatphotography.com/bali-wedding-destination-maria-dom-at-semara-beach-house-by-diktat.html (last visited Oct. 27, 2025); images: https://www.diktatphotography.com/wp-content/uploads/2016/07/diktatphotography-weddinginsemarabeachhouse-canggu-bali-baliweddingdestination-weddinginbali-baliweddingphotographer-20.jpg; https://www.diktatphotography.com/wp-content/uploads/2016/07/diktatphotography-weddinginsemarabeachhouse-canggu-bali-baliweddingdestination-weddinginbali-baliweddingphotographer-54.jpg; https://www.diktatphotography.com/wp-content/uploads/2016/07/diktatphotography-weddinginsemarabeachhouse-canggu-bali-baliweddingdestination-weddinginbali-baliweddingphotographer-84.jpg; https://www.diktatphotography.com/wp-content/uploads/2016/07/diktatphotography-weddinginsemarabeachhouse-canggu-bali-baliweddingdestination-weddinginbali-baliweddingphotographer-85.jpg; https://www.diktatphotography.com/wp-content/uploads/2016/07/diktatphotography-weddinginsemarabeachhouse-canggu-bali-baliweddingdestination-weddinginbali-baliweddingphotographer-91.jpg. *Josh Hill Photography – Portraits*, https://joshhillphotography.com/portraits  (last visited Oct. 27, 2025); image: https://static.livebooks.com/f075b0dba7bf4c5e8ff2c640e3d0a08d/i/d21e1dc2cbe540b0928c1dcabbc92fe5/2/GCuCv726vxAVM9sgguVj4g/19_0_232_1r1jhp2363.jpg. *Connect MPID News*, https://www.connectmpid.com.au/news/yg28ln7ems0eao5u2fsrkirmmg1wmh (last visited Oct. 27, 2025); image: https://images.squarespace-cdn.com/content/v1/60d3cdb0dc83fd4785b2472b/1755473586944-GREKN2O1N82NXDROBBQX/25680814-DSC_5778.jpg. *Vic & Siggy – Barossa Valley Wedding Story*, *I Got You Babe Weddings*, https://igotyoubabe.com.au/your-wedding-stories/vic-siggy-barossa-valley-sa-hentley-farm (last visited Oct. 27, 2025); image: https://images.squarespace-cdn.com/content/v1/57888ea83e00be7706aa9c1a/1526432693095-W0E0Q0LK3TR2MG350ATN/I-Got-You-Babe-Weddings-Vic-Siggy-Barossa-Valley0227.JPG. *Dance Till You Drop Reception Gallery*, *I Got You Babe Weddings*, https://igotyoubabe.com.au/your-wedding-stories/dance-till-you-drop (last visited Oct. 27, 2025); image: https://images.squarespace-cdn.com/content/v1/57888ea83e00be7706aa9c1a/1661901364627-T9YIIC266GP0K5CJGMF4/I_Got_You_Babe_Reception_gallery_0121.JPG. *Nawic Christmas Cocktails*, *Indesign Live*, https://www.indesignlive.com/news/nawic-christmas-cocktails (last visited Oct. 27, 2025); image: https://cdn.indesignlive.com/media/idlcom/2010/december/parties/nawic/nawic/IMG_7783_.jpg. *Buildcorp*, https://buildcorp.com.au/ (last visited Oct. 27, 2025); images: https://buildcorp.com.au/wp-content/uploads/2024/03/433252425_805047301663814_1823952662930804922_n.jpg; https://pif.com.au/wp-content/uploads/2024/03/DSC01992.jpg.

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1  here.  Indeed, the KGE site itself astutely observed that Defendants chose NSW as their forum

2  precisely because it is known for plaintiff-friendly defamation laws, which hold no sway in

3  California, where the site is hosted.  This disparity is precisely what Congress addressed in the

4  SPEECH Act: Congress found that foreign libel laws have been used to suppress U.S. authors,

5  and that "foreign libel judgments inconsistent with United States First Amendment protections

6  are increasingly common." The Act therefore prohibits recognition of foreign defamation

7  judgments unless the foreign law provided at least as much free-speech protection as U.S. law,

8  or the same result would have been obtained under U.S. standards.  Here, neither condition can

9  be satisfied by Defendants, not even close, as Australian law's inverted burdens and lack of

10 malice requirements fall short of constitutional mandates.

11      30.    **Foreign Judgment Unenforceable (SPEECH Act)**: Pursuant to 28 U.S.C. §

12 4102(a), this Court may not recognize or enforce any foreign defamation judgment against

13 Plaintiff unless Defendants, as the parties seeking enforcement, prove that the foreign

14 adjudication met U.S. free speech standards.  Defendants could not meet that burden.  As

15 established above, New South Wales law does not provide as much protection for speech as do

16 the U.S. Constitution and California law.

17      31.    **Personal Jurisdiction Defects Abroad**: Additionally, enforcement of the

18 Australian judgment is unwarranted because the foreign court lacks personal jurisdiction over

19 the authentic publishers of the speech, namely, the U.S.-based operators of the

20 "KurrabaGroup.Exposed" (KGE) site and the "x.com/kurrabagroup" account, as well as the

21 individual speakers who posted content, none of whom have any presence in Australia or

22 appeared in the proceeding. The SPEECH Act (28 U.S.C. § 4102(b)) requires U.S. courts to

23 ensure that the foreign court's exercise of jurisdiction comported with U.S. due process

24 standards.  Here, the case was wrongly aimed at Williams, who does not control the platform

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    or its content; by proceeding against him, the Australian court failed to obtain jurisdiction over

2    the actual U.S. publishers, including any platform operator and content-posting members.

3         32.    **Declaratory Relief Sought**: For these reasons, Plaintiff is entitled to a

4    declaratory judgment, pursuant to 28 U.S.C. § 2201(a) and 28 U.S.C. § 4104, that: (a)

5    Defendants' actions to censor KGE's publications, specifically the content published on

6    "KurrabaGroup.Exposed" and "x.com/kurrabagroup", violated KGE's First Amendment right

7    to free speech; (b) any judgment or order from an Australian court holding Plaintiff liable for

8    defamation (or similar torts like invasion of privacy or injurious falsehood) based on that

9    content is repugnant to the U.S. Constitution and laws and thus unenforceable in the United

10    States; and (c) specifically, the October 2025 injunction orders issued by the NSW District

11    Court in *Kurraba Group v. Williams* have no force or effect here and cannot lawfully be used

12    to suppress Plaintiff's website or to justify removal of Plaintiff's content by U.S.-based internet

13    services. Such a declaration will serve the valuable purpose of clarifying the parties' rights and

14    obligations: it will affirm Plaintiff's right to continue publishing its reporting free from foreign

15    censorship, and it will deter Defendants from attempting enforcement actions in the U.S., for

16    example, trying to domesticate a foreign money judgment or serve take-down orders on U.S.

17    entities.  Congress specifically provided for this remedy so that Americans like Plaintiff do not

18    have to live under the shadow of foreign libel verdicts.  A declaration will thus resolve the

19    controversy by conclusively rejecting Defendants' ability to leverage their Australian suit to

20    stifle Plaintiff's speech in the U.S., promoting certainty and preventing further litigation.

21    **COUNT II: INJUNCTIVE RELIEF (TEMPORARY RESTRAINING ORDER,**
22    **PRELIMINARY, AND PERMANENT INJUNCTION AGAINST ENFORCEMENT**
23    **OF FOREIGN JUDGMENT AND ONGOING CENSORSHIP) (ALL WRITS ACT,**
24    **28 U.S.C. § 1651, AND THIS COURT'S INHERENT EQUITABLE POWERS)**

25         33.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1   34.  Plaintiff seeks a temporary restraining order and a permanent injunction against

2 Defendants Kurraba Group and Nick Smith.  This relief is grounded in the Court's equitable

3 authority to protect constitutional rights from immediate and ongoing threats.

4   35.  Plaintiff is currently suffering, and will continue to suffer, irreparable harm if

5 Defendants are not enjoined.

6   36.  The SPEECH Act and First Amendment provide a complete defense to any

7 attempt by Defendants to enforce the Australian judgment here.  Indeed, in comparable

8 situations, U.S. courts have sided with free speech.  Plaintiff has demonstrated a likelihood of

9 success in showing that the foreign judgment is not enforceable under U.S. law, which, under

10 28 U.S.C. § 4104, entitles Plaintiff to relief in this Court.  The absence of any viable defense

11 by Defendants further tilts this factor decisively in Plaintiff's favor.

12   37.  The balance of hardships tips decidedly in Plaintiff's favor. Absent an

13 injunction, Plaintiff will continue to have its speech muzzled and its reputation, as a watchdog

14 outlet, damaged, and community members will be deprived of information.  By contrast,

15 Defendants will suffer no legitimate harm from an injunction, because an injunction would

16 merely prevent them from doing what they have no right to do in the first place, enforce an

17 illegal foreign censorship order in the U.S. Defendants cannot claim a cognizable interest in

18 implementing a defamation judgment that fails to meet U.S. constitutional standards.

19   38.  **Public Interest**: The public interest strongly favors granting the injunction.  The

20 public has a profound interest in upholding First Amendment freedoms and ensuring that

21 speech on matters of public concern is not suppressed by foreign litigants circumventing our

22 legal protections.  Congress explicitly identified the public importance of stopping "libel

23 tourism," recognizing that if foreign judgments are allowed to dictate what Americans can say,

24 it adversely affects the ability of journalists to publish their work on serious public issues.

25 Conversely, enforcing the Australian order or giving it a de facto effect via search engines

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1  would encourage a "race to the bottom," in which the most speech-restrictive foreign laws

2  control the Internet.

3      39.    Plaintiff seeks an order (a) enjoining Defendants Kurraba Group and Nicholas

4  Smith from taking any action to enforce, in the United States, the Australian orders or any

5  future foreign judgment relating to content posted on Plaintiff's platform, including but not

6  limited to prohibiting Defendants from seeking to remove, de-index, block, or otherwise

7  suppress Plaintiff's platform or content posted thereon through any U.S.-based company or

8  internet service. This includes barring Defendants from transmitting the Australian injunction

9  or judgment to U.S. web hosts, domain registrars, search engines, or social media companies

10  to induce removal or suppression of platform content and requiring Defendants to withdraw

11  and cease any ongoing requests premised on such foreign orders, including the request lodged

12  with Google LLC.  (Exhibit 2).  (b) Additionally, Plaintiff requests that the Court enjoin

13  Google, and any other persons in active concert with Defendants who receive notice of the

14  injunction, from complying with or giving effect to the Australian court's content-removal

15  orders as to Plaintiff's platform and direct Google to restore Plaintiff's platform to equal status

16  in its search index, i.e., not omit, de-index, or block it for users in any location, unless and until

17  a U.S. court of competent jurisdiction issues a lawful order adjudicating the content to be

18  defamatory or otherwise illegal under U.S. law. This relief is necessary both to protect KGE's

19  operation of its platform under Section 230 of the Communications Decency Act and to

20  vindicate the First Amendment rights of KGE's members whose speech has been suppressed.

21  It is also consistent with 28 U.S.C. § 4102(c), which forbids U.S. courts from recognizing

22  foreign defamation judgments against interactive computer service providers unless the

23  outcome is consistent with Section 230; here, the Australian order treats Google as a publisher

24  of third-party content posted by KGE's members, which is not consistent with Section 230's

25  immunity.  Enjoining enforcement of that order accords with statutory law and the CDA's

1   policy, indeed, as Judge Davila observed in analogous circumstances, "the Canadian order

2   likely disregards Section 230 … and undermines the public interest that Section 230 protects,

3   safeguarding free speech on the global internet." By issuing the requested injunction, the Court

4   will protect both the platform's right to exist as a forum for protected speech and the individual

5   members' rights to speak through that forum, without requiring those members to reveal their

6   identities or join this litigation, while preserving the neutral role of U.S. service providers rather

7   than conscripting them as censors at the behest of foreign courts.

8       40.  **No Security Bond Should Be Required or Only Nominal Bond**: Given the

9   substantial public interest at stake and the fact that Defendants will suffer no cognizable

10   monetary harm from being enjoined to respect First Amendment limits, Plaintiff requests that

11   any Rule 65(c) bond be waived or set at a nominal amount.  This is a public-interest First

12   Amendment case, and requiring a large bond would itself impose a chilling effect on speech

13   by potentially putting Plaintiff, a small grassroots publisher, at financial risk.

14       41.  Accordingly, Plaintiff respectfully requests that, after notice and an opportunity

15   to be heard, the Court issue a preliminary injunction followed by a permanent injunction as

16   described above, restraining Defendants and those in concert with them from enforcing or

17   giving effect to the Australian defamation/privacy orders against Plaintiff or its service

18   providers.

19                 **VI. PRAYER FOR RELIEF**

20   WHEREFORE, Plaintiff Kurraba Group Exposed respectfully requests that this Court enter

21   judgment in its favor and grant the following relief:

22   A) A Declaratory Judgment pursuant to 28 U.S.C. § 2201 that:

23       • Plaintiff's publications on "KurrabaGroup.Exposed" and "x.com/kurrabagroup"

24          are protected speech under the First Amendment, and that any foreign judgment

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1   or order rendered against Plaintiff (or its agents) for defamation, libel, slander,

2   invasion of privacy, or similar tort arising from those publications is repugnant

3   to the U.S. Constitution and unenforceable in the United States. This includes a

4   declaration that the injunction issued by the New South Wales District Court on

5   or about October 2, 2025, in *Kurraba Group & Nick Smith v. Williams*, has no

6   force or effect in the U.S. and may not be recognized or enforced by U.S. courts

7   or companies.

8   • Plaintiff Kurraba Group Exposed is, and at all relevant times has been, the

9   lawful publisher and operator of the website "KurrabaGroup.Exposed" and its

10   related social media accounts, including "x.com/kurrabagroup," and that it is

11   responsible for the publication of the content appearing thereon.

12   • Michael Williams is not, and has never been, the publisher, owner, operator, or

13   controller of the website "KurrabaGroup.Exposed" or its related social media

14   accounts, and that he bears no legal responsibility for the publication of any of

15   the content at issue in this action; and further, that any order, injunction, or

16   judgment now or in the future issued against Michael Williams in foreign or

17   domestic proceedings purporting to restrict or remove such content is

18   unenforceable against Plaintiff Kurraba Group Exposed, its members, agents,

19   or service providers within the United States.

20   B) An Order and Injunction preliminarily and permanently enjoining Defendants Kurraba

21   Group Pty Ltd and Nicholas Mark Smith, and their officers, agents, servants,

22   employees, attorneys, and any other persons in active concert or participation with

23   them, from taking any action to enforce or satisfy the above-referenced foreign court

24   order or any related foreign judgment against Plaintiff in the United States. This

25   injunction shall specifically bar Defendants from seeking removal, de-indexing,

1    blocking, or restriction of Plaintiff's online content by any internet search engine, web

2    hosting company, domain registrar, social media platform, or other entity subject to

3    U.S. jurisdiction, and from attempting to domesticate or execute on any foreign

4    judgment for defamation or similar claims against Plaintiff.

5    C) **Further Injunctive Relief involving Google**: An injunction directing Defendant

6    Google LLC, and its officers, agents, servants, employees, and those in active concert

7    with it who receive actual notice, to disregard the Australian court's removal or de-

8    indexing order with respect to Plaintiff's website, and to cease any blocking or filtering

9    of Plaintiff's website in Google's search results that was instituted solely in compliance

10    with Defendants' demands under the foreign order. In essence, Google shall be enjoined

11    to treat Plaintiff's website no differently than it would absent the foreign defamation

12    order, unless and until a valid U.S. court order requires otherwise.  This portion of relief

13    is sought to ensure full effectiveness of the declaratory judgment; it aligns with 28

14    U.S.C. § 4102(c)(1), which prevents enforcement of foreign defamation judgments

15    against interactive computer service providers unless consistent with 47 U.S.C. § 230,

16    a condition not met here.

17    D) **Costs and Attorneys' Fees**: An award of Plaintiff's reasonable attorneys' fees and

18    expenses incurred in this action, as authorized by statute or other law.  Plaintiff notes

19    that 28 U.S.C. § 4105 provides for an award of costs to a party opposing recognition of

20    a foreign defamation judgment if that party prevails.  Given that the Plaintiff's action is

21    the mirror image, seeking a declaration of non-enforceability, the spirit of the SPEECH

22    Act warrants a fee-shifting provision so that the Plaintiff can fully vindicate its First

23    Amendment rights without a financial barrier.  In the alternative, Plaintiff seeks fees

24    under any applicable equitable or state-law basis, including California Code of Civil

25    Procedure § 425.16(c) if the Court finds the action analogous to defeating a SLAPP, or

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

1    the Court's inherent power to award fees for having to litigate against a plainly

2    unenforceable foreign gag.

3    E)  Any further relief the Court deems just and proper, including such relief necessary to

4    protect Plaintiff's expressive rights and to effectuate the declaratory judgment.  This

5    may include, if appropriate, an order under the All Writs Act directing Defendants to

6    dismiss or stay the Australian proceedings to the extent they impinge on Plaintiff's U.S.

7    constitutional rights, or any other writ to prevent evasion of this Court's orders.

8                                   **VII. JURY TRIAL DEMAND**

9

10          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands

11    a trial by jury on all issues so triable.


Dated: October 28, 2025                                    Respectfully submitted,

Derek S. Khanna (Cal. Bar No. 308563)
706 Tesoro Road
Monterey, CA 93940
Tel: (202) 643-248                                         /s/*Derek S. Khanna*
Email: Derek.Khanna@gmail.com
                                                           _____
Mark I. Bailen (D.C. Bar No. 459623),                      Derek S. Khanna
*Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No.
4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff*
*Kurraba Group Exposed*

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

**VERIFICATION**

I, James Smith, declare as follows:

1.    I am an authorized representative of the association Kurraba Group Exposed, the Plaintiff in the above-entitled action, and I have read the foregoing Verified Complaint.

2.    I have been nominated by the association's members to serve as its representative in these proceedings.

3.    I was nominated by a vote of the organization, which was held on Telegram on October 21, 2025. A quorum of the membership attended; one member nominated me to serve as representative, and five voted in favor. Furthermore, the organization was apprised of this litigation and its costs and risks, and five members voted in favor of commencing.

4.    A vote of this type of how the organization commonly elects to make significant decisions of this type.

5.    I have not personally authored any of the content posted on the platform at issue. Individual members remain solely responsible for the content they have posted.

6.    I verify that the factual statements made in this Complaint regarding the platform's operation and the harm to our association are true and correct to the best of my knowledge, information, and belief.  As to those matters stated on information and belief, I believe them to be true.

7.    I have reviewed this complaint, and its Exhibits assert to their correctness and authenticity.

8.    I understand that this verification is made under penalty of perjury under the laws of the United States of America.

**Dated:** October 27, 2025

**KURRABA GROUP EXPOSED VERIFIED COMPLAINT**

**Signed:** /s/*James Smith* (On behalf of

Plaintiff Kurraba Group Exposed)