

# District Court
## New South Wales

| | |
|---|---|
| **Medium Neutral Citation:** | Kurraba Group Pty Ltd & Anor v Williams [2025] NSWDC 396 |
| **Hearing dates:** | 2 October 2025 |
| **Date of orders:** | 2 and 7 October 2025 |
| **Decision date:** | 07 October 2025 |
| **Jurisdiction:** | Civil |
| **Before:** | Gibson DCJ |
| **Decision:** | See paragraph [30] |
| **Catchwords:** | CIVIL PROCEDURE – application for injunction orders for intimidation– defamation – breach of privacy – ex parte proceeding – whether there is a serious question to be tried – balance of convenience – evidence of a "campaign of extortion" by the defendant to obtain financial advantage in exchange for ceasing to publish – interim injunction granted |
| **Legislation Cited:** | *Defamation Act 2005* (NSW) s 10A(5)<br>*District Court Act 1973* (NSW) s 46<br>*Judiciary Act 1903* (Cth) ss 39(2) and 39B(1A)(c)<br>Part 2 of Schedule 2 of *Privacy Act 1988* (Cth) and clauses 7 and 23<br>*Uniform Civil Procedure Rules 2005* (NSW) ("UCPR") r 10.20 |
| **Cases Cited:** | *Breunis v Penthouse Publications Ltd* (NSWSC, 15619 of 1992, 20 August 1993, Levine J, unreported)<br>*Capilano Honey Ltd v Dowling (No 2)* [2018] NSWCA 217<br>*Carbone v Fowler Homes Pty Ltd; Carbone v Fowler Homes Pty Ltd* [2024] NSWCA 192<br>*Douglas v Hello! Ltd* [2005] EWHC 786<br>*Flo Rida v Mothership Music Pty Ltd* [2013] NSWCA 268<br>*Geyer v Ghosn* (No 2) [2020] NSWDC 782<br>*QBH Commercial Pty Ltd v Nine Network Australia Pty Ltd* [2016] VSC 441 |

*Richards (a pseudonym) v Jones (a pseudonym)* [2025] NSWSC 5
*Trkulja v Google LLC* [2018] HCA 25; 263 CLR 149
*Whittington v Newman* [2024] NSWCA 27
*Yap v Matic* [2022] WASC 181

| | |
|---|---|
| **Category:** | Procedural rulings |
| **Parties:** | Plainitff:<br>1st Plaintiff: Kurraba Group Pty Ltd<br>2nd Plaintiff: Nicholas Mark Smith<br>Defendant: Mr Michael Brian Wiliams |
| **Representation:** | Counsel:<br>Plaintiffs: Mr T Smartt<br>Defendant: Ex Parte<br>Solicitors:<br>Plaintiffs: Corrs Chambers Westgarth<br>Defendant: Ex Parte |
| **File Number(s):** | 2025/00378917 |
| **Publication restriction:** | s 8(1)(a) and/or (e) of the Court Suppression and Nonpublication Orders Act 2010 (NSW) |

# JUDGMENT

**The application before the court**

1. The plaintiffs, an Australian proprietary company and its chief executive officer, seek a suite of interlocutory orders designed to bring what they call a "campaign of extortion" by the defendant to an end. That campaign included:

    (a) Maintaining a publicity campaign against both plaintiffs while secretly approaching the plaintiffs for the purpose of demanding $50,000 in exchange for desisting in this conduct.

    (b) Publishing a one-star google review of the first plaintiff (and, by inference, the second plaintiff) in furtherance of this proposal.

    (c) Making allegations about the plaintiffs in a public meeting in furtherance of this proposal.

    (d) Creating a public website ("Kurraba Group Exposed") on which a series of publications were made for the same purpose.

2. The defendant is the sole director and secretary of Glexia Pty Ltd, a company that briefly leased premises the subject of a development application brought by the first plaintiff. He is asserted to have brought the campaign of extortion for the purpose of obtaining financial benefit sought in exchange for ceasing to publish.

3. The plaintiffs commenced proceedings in the Defamation List on 2 October 2025 and now seek urgent interlocutory orders, pending the hearing of their claims for damages and other relief (including permanent injunctive relief) for the torts of defamation and serious invasion of privacy (in the case of the second plaintiff, the chief executive officer of the first plaintiff) and intimidation.

4. Courts approach the issue of interlocutory injunctions in defamation proceedings with caution: *Capilano Honey Ltd v Dowling (No 2)* [2018] NSWCA 217 at [103] – [109]. Where an application is made on the basis of other causes of action, in addition to or in the absence of a claim for defamation, a similar concern arises with respect to the intrusion upon freedom of speech with respect to a matter of potential public interest: *Capilano Honey Ltd v Dowling (No 2)* at [123] at [21]. Care must be taken where one of the parties is an excluded corporation: *QBH Commercial Pty Ltd v Nine Network Australia Pty Ltd* [2016] VSC 441 at [6].

5. This is the first time that an application for relief under the recently enacted provisions in the *Privacy Act 1988* (Cth), namely cl 7, Part 2 of Schedule 2 of that Act has been brought. This legislation was intended to provide a flexible framework to address

current and emerging privacy complaints and to provide individuals with the ability to protect themselves and seek compensation for a broader range of invasions of privacy than is the case under existing law.

6    The application was heard by me on an ex parte basis on 2 October 2025. The documentation tendered to me has consisted of the following:

   (a)   The statement of claim filed in these proceedings.

   (b)   The confidential exhibit tendered.

   (c)   The affidavit of Mr Jim Micallef dated 2 October 2025.

   (d)   Written submissions.

7    The urgency in the matter is that the plaintiff's ongoing campaign is likely to trigger more damaging publications, as was the case in *Richards (a pseudonym) v Jones (a pseudonym)* [2025] NSWSC 5. The defendant in that case had threatened to accuse the plaintiffs of paedophilia unless they paid him money (at [31] and [44]). The defendant in these proceedings has not only made financial demands on the plaintiffs in exchange for withdrawing his allegations but has told them that he has had success with this kind of activity before, citing three examples of large corporate entities who have had to pay up in the past. The plaintiffs have supplied to the court, on the basis of confidential restrictions, evidence that supports the defendant's claims of success.

8    After hearing oral submissions from Mr Smartt of counsel, I made the orders sought. These are my reasons for doing so. By reason of the urgency of the application, these reasons are brief.

9    On 7 October 2025, at the request of the plaintiffs, I made a minor variation to those orders in relation to the confidential documentation. As another judge will hear this application on the next return date, I have added a notation identifying applications to be made by the plaintiffs when these proceedings return to court on 9 October 2025.

**The circumstances leading to the plaintiffs' ex parte application**

10    The first plaintiff ("Kurraba") lodged a development application with the City of Sydney to develop and establish a life science hub in the vicinity of 100 Botany Road Alexandria. Botany Road development Pty Ltd as trustee for the Botany Road development trust ("BRD") is the owner of the real property to be developed and is also

the company responsible for the development. Mr Smith, the second plaintiff, is the sole director and shareholder of BRD. The cost of the work associated with the development is $219,696,000 (affidavit of Mr Micallef, paragraph 15).

11  Kurraba publicly announced its intention to lodge the development application in or about 19 and 20 June 2024. That announcement was widely disseminated. Part of the property includes premises at 98-100 Wyndham Street Alexandria, which is adjacent to 100 Botany Road Alexandria.

12  At about the same time as the announcement made by Kurraba, the property in Wyndham Street was advertised by real estate agent for short-term rental. This property was owned by C & A Berk Holding No 2 Pty Ltd ("Berk"). BRD exercised an option to purchase the Wyndham Street property. A sign was placed on the front of the Wyndham Street property advertising that it was available for short-term rental. The defendant called the real estate agent and said words to the effect that he was interested in leasing the property. The real estate agent told him the property was to be sold and knocked down for development. On 26 June 2024 Glexia Pty Ltd, the company of which the defendant was the sole director and secretary, entered into a commercial lease for a period of six months commencing on 1 July 2024 and ending on 1 January 2025. Significantly, the defendant did in fact vacate the premise on or around that date.

13  The first interaction between the plaintiffs and the defendant occurred when Mr Williams sent a text message to Mr Smith, the second plaintiff, which stated as follows:

> "Dear Kurraba Group,
>
> Your development at 100 Botany Road (SD-63067458 /D/2024/937) intends to cause considerable disruption to my business and likely violates numerous laws, regulations, rules, and policy documents.
>
> We intend to oppose the development first by submitting it to the State of New South Wales and the City of Sydney Local Government Area and, if still approved, the Land Environment Court and/or Supreme Court.
>
> I write to establish communications before formal opposition proceedings and litigation to see if there might be a way to resolve these issues amicably, saving us both the immense cost and time of such proceedings.
>
> We have begun retaining experts to develop a more comprehensive opposition package and to impact the various reports you have submitted as part of your package.
>
> I have attached our preliminary submissions, which will be submitted to the State of New South Wales and the City of Sydney on 29 November 2024 unless we reach some agreement to mitigate the impacts on our business.
>
> Regards,
>
> Michael Williams"

14  On its face, this document appeared to be a complaint from a neighbour genuinely aggrieved with a development application. However Glexia Pty Ltd, the company which had taken out the lease, merely had a short-term lease expiring on 1 January 2025 with no option to renew, and would thus be obliged to leave the property within the development site in less than two months.

15  On 11 November 2024, Mr Williams and Mr Smith had a meeting at a restaurant. Mr Smith states that the following conversation occurred:

> "On 11 November 2024, Mr Williams and Mr Smith met at restaurant in a hotel: Micallef Affidavit at [30]. The following conversation transpired according to Mr Williams (Micallef Affidavit at [30]):
>
>> Mr Williams: "I will be lodging objections to your development. Unless you pay me $50,000, I will not remove any of these objections. If you pay, I will remove the objections. I have current disputes with John Holland, Australia Post and Google. I usually get about $15,000, but I cost them far more in legal fees and in John Holland's case, it cost them about $700,000."
>>
>> Mr Smith: "This is not a matter for Kurraba. It's a matter that you will need to speak with the current landowners as Kurraba doesn't own the land."
>
> Later on 11 November 2024, Mr Williams sent a text message to Mr Smith (Micallef Affidavit at [32]):
>
>> "This offer is without prejudice, save as to costs. Thank you for meeting. We've just commenced litigation against the landlord to stay in the property (see attached). We believe $50,000 is a reasonable amount of compensation to cover our moving and first two months of rent in a new building given the demolition occurring. Should you agree, we will relocate 90 days from the date a deed is settled. I must receive notification by 15 November 2024. Your offer would go a long way in resolving this situation which has put us in a very difficult situation."
>
> Shortly after receiving this text message, Mr Williams refused this demand, saying (Micallef Affidavit at [38]):
>
>> "Hi Michael, you will have to work it out with your property manager and current landlord for the time being. Happy to take a call anytime.""

16  After the defendant's demand for $50,000 was refused, he began a campaign against both Mr Smith and the development as follows:

   (a)  On 26 November 2024 he lodged 64 pages of written submissions opposing the development and calling on the council to terminate the development.

   (b)  On 30 January 2025 he left the following one-star Google review for Kurraba:



(c) On 13 February 2025, the defendant made oral submissions to the Central Sydney Planning Committee of the City of Sydney which was considering the development application. He made serious allegations and was interrupted by the Lord Mayor and told to stop speaking.

(d) On or after 1 March 2025, the defendant created the Kurraba Group Exposed website where (as set out in the statement of claim at paragraphs 23 -89 and 91) he made a series of allegations of the gravest kind against both plaintiffs.

17   The plaintiffs bring claims for relief as follows:

(a) The second plaintiff, Mr Smith, brings a claim for defamation for the publication of the 15 publications identified in paragraphs 90 and 91 and for such further publication as may continue to appear. On 29 July 2025, Mr Smith sent the defendant a concerns notice in relation to one of the publications (the "Promises" article dated 12 May 2025) and, on 1 October 2025, sent a second concerns notice for the 15 publications in paragraph 91. Mr Smith seeks leave to commence proceedings for defamation for the publications listed in paragraph 91 notwithstanding the fact that 28 days has not yet lapsed, by reason of the continuing nature of these defamations. I grant this leave having regard to the factors identified in *Whittington v Newman* [2024] NSWCA 27 at [49]. I also find that notwithstanding what the plaintiffs acknowledging to be "slim" (submissions, paragraph 41) evidence of serious harm that there is sufficient to satisfy the court in accordance with s 10A(5) of *Defamation*

*Act 2005* (NSW) for the purpose of interim relief. I take into account the nature and number of these publications and the secretive way that the defendant has hidden his true motives for these publications.

(b) The second plaintiff brings a claim in tort for serious invasions of privacy, the elements for which are set out in cl 7, Part 2 of Schedule 2 of the *Privacy Act 1988.* One of the difficulties facing the court when describing the conduct the subject of such a claim is that merely repeating the false allegations in a judgment can increase the damage: *Trkulja v Google LLC* [2018] HCA 25; 263 CLR 149 at [49], (the so-called "Streisand effect") so I will say as little about the subject matter as possible.

(c) Both plaintiffs bring a claim for the tort of intimidation (paragraphs 106 – 107 of the statement of claim) for the publications and acts set out in paragraph 106.

**The Court's jurisdiction and power**

18   The plaintiffs seek interlocutory injunctions pursuant to s 46 of the *District Court Act 1973* (NSW) which provides:

> "**46   Ancillary equitable relief: injunctions**
>
> (1) Without affecting the generality of Division 8, the Court shall, in any action, have power to grant any injunction (whether interlocutory or otherwise) which the Supreme Court might have granted if the action were proceedings in the Supreme Court.
>
> (2) In relation to the power of the Court to grant an injunction under this section—
>
> (a) the Court and the Judges shall, in addition to the powers and authority otherwise conferred on it and them, have all the powers and authority of the Supreme Court and the Judges thereof in the like circumstances,
>
> (b) the appropriate officer of the Court shall, in addition to the duties otherwise imposed on the officer, discharge—
>
> (i) any duty which an officer of the Supreme Court would be required under the practice of the Supreme Court to discharge in the like circumstances, and
>
> (ii) any duty imposed on the officer by the rules or by any order of the Court,
>
> (c) the practice and procedure of the Court shall, so far as practicable and subject to this Act and the rules, be the same as the practice and procedure of the Supreme Court applicable in the like circumstances, and
>
> (d) without affecting the generality of the foregoing provisions of this section, the powers, authority and duty conferred by paragraphs (a) and (b), and the practice and procedure of the Court referred to in paragraph (c) shall, subject to the rules, extend to the enforcement of any order of the Court made in connection with proceedings for the grant of the injunction.
>
> (3) Without affecting the generality of any other provision of this Act authorising the making of rules, the rules may make provision for or with respect to—
>
> (a) the procedure to be followed with respect to the granting and enforcing of an injunction under this section, and

(b) any other matter necessary or convenient for giving effect to this section."

19  The court may also restrain, by interlocutory or other injunction, conduct that has not yet been committed, in relation to apprehended as well as actual conduct.

20  The source of the court's power to grant relief under the *Privacy Act* is relevant to the question not only of interim but final relief in this Court, having regard to the limitations on the power of the District Court to make orders for permanent injunctive relief *Carbone v Fowler Homes Pty Ltd; Carbone v Fowler Homes Pty Ltd* [2024] NSWCA 192 [2024] NSWCA 192 at [40]. Clause 23 of Part 2 of Schedule 2 of the *Privacy Act* includes a notation that "State courts and the Federal Court of Australia have jurisdiction in relation to matters arising under this Schedule (see subsection 39(2) and paragraph 39B(1A)(c) of the *Judiciary Act* 1903)".

21  Section 39(2) of the *Judiciary Act 1903* (Cth) provides that "[t]he several Courts of the States shall within the limits of their several jurisdictions, whether such limits are as to locality, subject-matter or otherwise, be invested with federal jurisdiction, in all matters in which the High Court has original jurisdiction or in which original jurisdiction can be conferred upon it, except as provided in section 38, and subject to the following conditions and restrictions". These are:

(1)  The Commonwealth Parliament could confer original jurisdiction on the High Court to grant relief under the *Privacy Act*, by reason of s 76(ii) of the Australian Constitution.

(2)  None of the exceptions, conditions or restrictions in s 38 of the *Judiciary Act* relevantly apply here.

22  On the strength of the above, I accept that the District Court of NSW has the necessary jurisdiction under the *Privacy Act* to grant relief in relation to the tort of serious invasion of privacy. This is clearly the case for interlocutory relief, which is all that concerns this application, and may well also apply to final relief, although the precise parameters of power will have to await determination for another day.

**Is there a serious question to be tried?**

23  The tort of intimidation has not been litigated extensively in Australia, as Solomon J notes in *Yap v Matic* [2022] WASC 181 at [130]. However, there is agreement about the elements of the tort:

   (a)   The defendant has made a demand, coupled with a threat, to either the plaintiff or a third party.

   (b)   The threat is to commit an unlawful act.

   (c)   The person threatened complied with the demand, thereby causing loss to the plaintiff or alternatively was in the position of having to consider doing so in the future.

24  The evidence at this interlocutory stage is that the conduct of Mr Williams is directed at extorting funds from Kurraba and Mr Smith. No legitimate reason is put forward for Mr Smith for engaging in this conduct. Indeed, his boast of having had success against other large corporations (John Holland, Australia Post and Google), where he engaged in similar conduct, such as his reprehensible attack on the wife of an employee of one of those companies, is the clearest of indications of a serious claim of need for interim relief, based on the tort of intimidation, for both plaintiffs.

25  There is similarly a serious question to be tried in relation to the tort of privacy for the second plaintiff for defamation and for the tort of defamation.

26  As to the tort of privacy, the affidavit of Mr Micallef comprehensively sets out the misuse of private wedding photographs which were never intended to be made public. In *Douglas v Hello! Ltd* [2005] EWHC 786, Lindsay J noted at [66] that functions of this kind were intended to be "as private as was possible". This is all the more the case here, as the second plaintiff and his wife were not public figures and had no intention of publishing their wedding photographs to any media or other mass publication organisation. The photographs in question were, further, misused by the defendant in that he sought to portray what they depicted as indicating moral delinquency and drunkenness as opposed to the sanctity of marriage and the ceremonial proceedings attendant thereupon.

27  Similarly, the misuse of private photographs has long been recognised in Australia as being capable of amounting to defamation where they appear out of context (*Geyer v Ghosn* (No 2) [2020] NSWDC 782), as no question of consent can arise: *Breunis v Penthouse Publications Ltd* (NSWSC, 15619 of 1992, 20 August 1993, Levine J, unreported).

**Balance of convenience**

28  For the reasons set out by Dhanji J in *Richards (a pseudonym) v Jones (a pseudonym)*, the balance of convenience clearly favours the plaintiffs. The defendant's conduct is not that of journalistic-style investigation, but of extortion. There is no evidence of any other legitimate reason for the defendant's conduct.

**Ancillary matters**

29    I have made orders for service on the defendant which do not require personal service (as to which, see *Uniform Civil Procedure Rules 2005* (NSW) ("UCPR") r 10.20). I have done so because I am satisfied, from the defendant's correspondence referring to his ability to avoid contact by, inter alia, blocking his email account, that he is more likely than not to attempt to avoid service and that the corporate entity behind which he conducts his affairs is registered in an overseas jurisdiction. In an era where litigation parties are in fact far easier to contact electronically than in person, where these shadowy entities are furthermore used by them to conduct their business affairs on a day to day basis, and where proof of electronic means of service are sufficiently reliable, a defendant should not be able to seek to avoid the bringing of proceedings by relying upon nineteenth-century niceties such as personal service (sed quaere *Flo Rida v Mothership Music Pty Ltd* [2013] NSWCA 268).

**Orders**

30    It was for the reasons set out above that I made the following orders:

The plaintiffs providing the usual undertaking as to damages in Court today:

(1) An order abridging the time for service of this statement of claim to twenty-four hours from the making of this order.

(2) An order authorising the service of:

    (a) the statement of claim;

    (b) the orders made by the Court;

    (c) the Affidavit of James Micallef and Exhibit JM-1 to the Affidavit (but excluding Confidential Exhibit JM-2); and; and

    (d) the written submissions sent to the Court,

(3) via the following methods of service:

    (a) sending it by express post to the registered office of the defendant's company, Glexia Pty Ltd, suite 1515 50-58 Macleay Street, Elizabeth Bay;

    (b) sending it by express post to the defendant's post office box address, PO Box 1524, Potts Point, NSW, 1335;

    (c) sending it by email to the defendant at his email address, mbw1337@icloud.com; and

    (d) sending it to the email address of the Kurraba Exposed website, kurrabagroup@proton.me.

(4) An injunction restraining the defendant, until the final determination of these proceedings, from publishing any document (including, without limitation, by way of posting articles on the Internet, posting videos on the Internet, sending a text message, or sending an email) referring to or identifying Nicholas Smith,

Kurraba Group Pty Ltd or the development the subject of State Significant Development Application number SSD-63067458 (Botany Road Development), expressly or by implication, other than to:

    (a)    Nicholas Smith;

    (b)    Nicholas Smith's legal representatives;

    (c)    the defendant's legal representatives; or

    (d)    a court or any staff of that court.

(5)    An injunction requiring the defendant, within two days of the order, to take all steps to remove from the Internet and/or any social media platform any website, article, advertisement or document referring to or identifying Nicholas Smith, Kurraba Group Pty Ltd or the development the subject of the Botany Road Development, expressly or by implication.

(6)    An injunction restraining the defendant, until the final determination of these proceedings, from repeating or continuing to publish a website, article, advertisement or document referring to or identifying Nicholas Smith, Kurraba Group Pty Ltd or the development the subject of the Botany Road Development, expressly or by implication.

(7)    An injunction restraining the defendant, until the final determination of these proceedings, from inciting, encouraging or otherwise suggesting to any person that such person engage in conduct from which the defendant is, by these orders, restrained.

(8)    An order pursuant to s 8(1)(a) and/or (e) of the *Court Suppression and Nonpublication Orders Act 2010* (NSW) that no person is to disclose, by publication or otherwise, beyond these proceedings:

    (a)    the email sent by Michael Williams to Mark Wilks and Jim Micallef on 2 January 2024 threatening to launch websites;

    (b)    the names of the people with whom Kurraba does business, referred to in the Affidavit of James Micallef dated 2 October 2025 at [49], [54 and [55];

    (c)    the identity of the person, referred to in the Affidavit of James Micallef dated 2 October 2025 at [71];

    (d)    the article posted on the Poggioli Exposed Article, referred to in the Affidavit of James Micallef dated 2 October 2025 at [31(c)]; and

    (e)    the content of the confidential exhibit JM-2which is placed in the sealed envelope.

(9)    such order to last until the final determination of the proceedings.

(10)    An order granting leave to the second plaintiff under s 12B(1)(c) of the *Defamation Act 2005* (NSW) to commence these proceedings before the expiration of the applicable period for an offer to make amends in relation to the

publications in the statement of claim identified as:

    (a)    the Homepage;

    (b)    the Assessment of Nick Smith Article;

    (c)    the Theft Article;

    (d)    the Investor Funds Article;

    (e)    the AVO Article;

    (f)    the Critical Review Article;

    (g)    the First X Post;

    (h)    the Second X Post;

    (i)    the Third X Post;

    (j)    the Fourth X Post;

    (k)    the Fifth X Post;

    (l)    the Sixth X Post;

    (m)    the Seventh X Post;

    (n)    the Eighth X Post; and

    (o)    the Ninth Post.

(11)    The proceedings are stood over to the Defamation List on 9 October 2025, for determination as to whether the plaintiffs' interim injunctive orders made today shall be extended, varied or discontinued pending case management and trial of these proceedings.

Note:

(1)    The plaintiff will address the question of service of Confidential Exhibit JM-2 on the defendant at the next listing of the proceedings on Thursday, 9 October 2025, and seek an order requiring the plaintiffs to serve Confidential Exhibit JM-2 on a solicitor on the record for the defendant within 24 hours of the plaintiffs being served with a Notice of Appearance for the defendant, with the limitation that, until further order, Confidential Exhibit JM-2 not be disclosed to the defendant.

**********

## Amendments

17 October 2025 - Typographic error in Catchwords

---

DISCLAIMER - Every effort has been made to comply with suppression orders or statutory provisions prohibiting publication that may apply to this judgment or decision. The onus remains on any person using material in the judgment or decision to ensure that the intended use of that material does not

breach any such order or provision. Further enquiries may be directed to the Registry of the Court or Tribunal in which it was generated.

Decision last updated: 17 October 2025