Derek S. Khanna (Cal. Bar No. 308563)
706 Tesoro Road
Monterey, CA 93940
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com

Mark I. Bailen (D.C. Bar No. 459623), *Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No. 4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff, Kurraba Group Exposed*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **Kurraba Group Exposed**, an unincorporated association, <br><br> Plaintiff, <br><br> v. <br><br> **Kurraba Group Pty Ltd,** a New South Wales, Australia, private limited company <br><br> **Nicholas "Nick" Mark Smith**, an individual residing in New South Wales, Australia, <br><br> Defendants. | Case No. _____ <br><br> **DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH** |

### DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH

1   I, James Smith, declare:

## DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH

1. I am an authorized representative and member of Plaintiff Kurraba Group Exposed ("KGE"). I am a resident of California, United States. I am over 18 years of age and competent to testify to the matters set forth in this declaration. I make this declaration in support of KGE's Verified Complaint and its application for a Temporary Restraining Order ("TRO") in the above-captioned action. KGE is an unincorporated association of community activists based in California, United States. We coordinate our activities primarily through a Telegram[1] group. In that group, one member nominated me to serve as KGE's representative for purposes of this litigation, and a total of five (5) KGE's members, communicating through the Telegram group, voted to confirm my selection. I accepted the nomination and am duly authorized to act on behalf of KGE in this matter.

2. I have personal knowledge of the facts stated below or have learned them through my involvement with KGE. I have reviewed the Verified Complaint filed in this action. To the extent the Verified Complaint alleges facts within my personal knowledge, I affirm that those facts are true and correct; to the extent it is based on information and belief, I believe those allegations to be true. Among other things, the Complaint makes clear that KGE's website and social media are operated by U.S.-based activists, not by Mr. Michael Williams, the Australian individual whom Defendants sued abroad. It also describes how Defendants obtained a foreign court order to suppress KGE's publications. I incorporate those descriptions here by reference, and I will further attest to the facts within my knowledge regarding KGE's operations and the harms we are experiencing.

---

[1] Telegram is a cloud-based messaging platform that allows users to send text messages, photos, videos, and files securely across devices. It offers end-to-end encrypted chats, large group capabilities, and powerful channels for broadcasting to unlimited audiences. Telegram is known for its privacy features, speed, and support for bots and automation tools.

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

3. I am not Michael Williams. Mr. Williams is an Australian community activist who has opposed Kurraba Group's development but is not involved in operating KGE's website or social media accounts.

4. **No Personal Role in Content Creation**: While I serve as an authorized representative of KGE to protect the First Amendment rights of our association and its members, I am not personally the author, creator, or originator of any content posted on the KurrabaGroup.Exposed platform. I have never written, uploaded, or created any posts, articles, or other material that appears on KGE's website, nor do I exercise editorial control over member submissions. My role is to represent the association's interests in protecting our members' constitutional right to speak on matters of public concern, and to maintain the technical infrastructure that enables their expression. My lack of personal involvement in content creation is similar to that of Mr. Williams, whom the Complaint confirms has never operated the KGE platform. Though I have administrative access for technical maintenance and to document harms to our platform (such as traffic analytics), I do not use this access to create, edit, or direct content. I appear in this action solely in my representative capacity to defend the association and its members' First Amendment rights, not as a content creator.

5. **KGE as a Platform for Protected Speech**: KGE operates as an online platform that enables association members to exercise their First Amendment rights by sharing information and commentary about matters of profound public concern. Our association's purpose is to provide a forum for community members to engage in constitutionally protected speech about government processes, corporate accountability, and the community impacts of development projects. Between five and ten association members have independently contributed content to the platform, each exercising their individual First Amendment rights to speak on public issues. To protect these speakers from retaliation while enabling their protected expression, we provide secure platform access through our member network. Association

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

members who post content do so as individual speakers exercising constitutional rights, with each bearing personal responsibility for their own expression. KGE as an association maintains the platform infrastructure and has standing to protect the collective First Amendment interests of our members when their speech is suppressed, as has occurred here. The censorship of our platform injures the association's mission of facilitating protected speech, harms each member's ability to reach their audience, and violates the public's right to receive information. While individual members remain responsible for their own content, KGE, as an association, suffers a distinct injury when foreign censorship shuts down the entire platform our members rely on for their protected expression. No individual member, including myself, controls what other members choose to express, but we unite as an association to defend our collective right to maintain this forum for protected speech.

6. **Associational Standing and Member Protection**: KGE has standing to assert First Amendment claims on behalf of its members because: (a) our individual members have suffered injury through suppression of their speech on the platform; (b) protecting members' freedom of expression on matters of public concern is germane to KGE's central purpose; and (c) neither the claims asserted nor relief requested requires participation of individual members in this lawsuit. The suppression of the KGE platform directly frustrates our association's mission and harms our members' constitutional rights. While KGE seeks to vindicate these collective First Amendment interests, individual members who post content remain solely responsible for their own expressions and are not personally parties to this action. As the association's representative, I am authorized to pursue relief that will restore our platform and protect our members' ability to speak, without exposing individual content creators to liability or requiring their participation in this proceeding.

7. **Formation of KGE and Mission**: KGE was formed earlier this year when a group of U.S.-based activists and writers noticed community concerns arising from

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

1  Defendants' real estate development activities in Australia. We worked together to create the
2  "Kurraba Group Exposed" website to investigate and shed light on Defendants' conduct. Our
3  site publishes detailed investigative pieces, factual reports, and commentary regarding Kurraba
4  Group's projects and business practices. The topics we cover include allegations of deception
5  in the development approval process, misuse of public lands, broken promises to the
6  community, and other matters of significant public concern. The tone of our reporting is critical
7  and hard-hitting, but it is grounded in documentation and evidence, consistent with the
8  traditions of watchdog journalism. KGE's mission is to hold powerful actors accountable and
9  inform the public, especially the local community and investors, about the truth behind Kurraba
10 Group's operations. We believe this kind of speech is not only truthful and important but lies
11 at the core of protected First Amendment expression. I provide this context to underscore that
12 KGE is a *bona fide* collective publisher of public interest information, not a personal blog or a
13 vehicle for any individual's grudges.

14       8.  **Defendants' Foreign Lawsuit and Injunction**: Rather than address the issues
15 raised in KGE's reporting, Defendants Kurraba Group Pty Ltd and its CEO Nick Smith
16 responded by attempting to silence us through legal action abroad. In early October 2025, we
17 became aware that Defendants had filed a defamation and privacy lawsuit in New South Wales,
18 Australia, targeting our website's content. However, instead of suing KGE or attempting to
19 identify the actual contributors, Defendants sued an uninvolved individual, Michael Williams,
20 in those Australian proceedings. Prior to that lawsuit, KGE's U.S.-based operators informed
21 Defendants' representatives that Mr. Williams is not the owner or operator of the KGE website.
22 Despite being told they had the wrong person, Defendants pressed forward and filed the suit
23 against Mr. Williams on or about October 2, 2025. They did so without attempting any
24 preliminary discovery to ascertain who actually runs KGE, even though such methods were
25 available. This decision to proceed against a known wrong defendant underscores that the true

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

1  aim of the foreign action was not to seek redress from the actual speakers but to obtain a quick
2  censorship order against the site.

3      9.    **Australian Court's Order**: I have reviewed the interim orders issued by the
4  District Court of NSW, Judge Gibson, in the case of *Kurraba Group Pty Ltd & Anor v. Michael*
5  *Williams*. The orders were granted ex parte on or about October 7, 2025, without KGE or Mr.
6  Williams having an opportunity to be heard. The injunction prohibits Mr. Williams from
7  "publishing or republishing... by way of posting articles on the Internet... referring to Mr. Smith
8  and Kurraba," and requires Mr. Williams "within two days" to "take all steps to remove from
9  the Internet... any website, article, advertisement or document referring to or identifying Mr.
10 Smith and Kurraba." The order requires Mr. Williams to effectuate the removal of all online
11 content mentioning Nick Smith or Kurraba Group, which encompasses our entire KGE website
12 and social media posts, despite neither I nor any other KGE member being a party to that case.
13 The order applies to Mr. Williams, who has never published content on KGE's website.
14 Defendants obtained this order after being informed in writing that Mr. Williams was not
15 involved with operating the KGE website, and that the actual operators were U.S.-based
16 individuals. Following the issuance of this order, Defendants used it to request the removal of
17 KGE's content from U.S.-based internet services.

18     10.    **Notice to Google and Suppression of KGE's Website**: Shortly after the
19 Australian injunction was issued, Defendants moved to enforce it indirectly by targeting U.S.-
20 based internet services. In particular, Defendants, or agents acting on their behalf, provided
21 Google LLC, a California-headquartered company, with a copy of the Australian court order
22 and demanded that Google remove or block KGE's content from its search results despite the
23 order not naming Google as an enjoined party. On or about October 20, 2025, KGE was
24 informed by Google that Defendants had filed a legal complaint and that, as a result, our
25 website was being suppressed in Google's Australian search index. Google's notice indicated

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

that certain URLs from KurrabaGroup.Exposed would be de-indexed and removed from search results for users in Australia. Initially, Google suggested this geo-blocking would be limited to Australian users. However, almost immediately, we observed a far broader impact: KGE's site disappeared from Google search results globally. In practical terms, after October 20, 2025, if one searched on Google for terms like "Kurraba", "Kurraba Group," or "Nick Smith Kurraba," none of our website's pages would appear in the results, even for U.S. users. Google effectively made our site invisible to the searching public, worldwide. Even our social media page (the @kurrabagroup account on X.com) was not being listed in Google search results, which was unprecedented. We confirmed these developments through our own tests and monitoring: queries that previously placed our site at the top of Google results were now returning nothing relevant to KGE. In response to this situation, KGE publicly noted on our website and social channels accessible to existing followers that Defendants had managed to get our content blocked on Google in Australia, and that this was an apparent attempt to censor unfavorable reporting. Unfortunately, whether by design or by an overbroad implementation on Google's part, the censorship has not been confined to Australia; it has, *de facto*, taken KGE's content out of view globally. This outcome is directly attributable to Defendants' actions in presenting the Australian injunction to Google and perhaps other intermediaries.

11. **KGE's Site Remains Suppressed**: As of the date of this declaration, KGE's website remains suppressed in search visibility. Users in Australia cannot find us on Google at all, due to geo-blocking. Users in the United States and elsewhere also largely cannot find our site through Google search, because our pages have been de-indexed or heavily de-prioritized. This de-indexing severely hampers KGE's ability to reach its intended audience and to participate in public debates. Based on our analytics and experience, Google search is a primary way readers, especially those in Australia, concerned about the Kurraba Group's project, discover our reporting. Most of the Australian public, and even many interested people

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

in the U.S., rely on search engines to find news and commentary on topics of civic importance. Even if readers know the direct URL, many use Google as a quasi-browser bar to navigate to a site. If KGE's site is absent from search results, the information we provide is effectively hidden from the very community we aim to inform. In concrete terms, each day that our site remains de-indexed is a day that Defendants' narrative about their development project goes unchallenged in the most widely used forum for information-seeking, and a day that KGE's voice is silenced on matters of public concern. The harm is not only to KGE's expressive reach but also to the public's ability to obtain important information.

12. **Threat of Further Censorship Actions**: I am also aware of the possibility and danger that Defendants could use the Australian injunction to pressure other internet intermediaries besides Google. KGE's website is hosted by a U.S.-based web hosting company, and our domain is registered through a U.S.-based registrar. The Australian order's broad language, which mandates removing our content "from the Internet," could be interpreted by Defendants as requiring Mr. Williams, the enjoined party, to attempt to get KGE's site taken down entirely, not just de-listed from search. We fear that Defendants may seek to enforce the injunction by approaching our hosting provider, domain registrar, or even social media platforms, demanding that they remove or block KGE's content to comply with the foreign court order. This fear is well-grounded as Defendants have already weaponized this Court order once against a U.S. entity. Such actions would likely target U.S. companies, since our site and services are U.S.-hosted, and would raise serious conflicts with U.S. law and jurisdiction. Nonetheless, the prospect of these enforcement efforts is real. If Defendants attempt this, it will represent a further escalation of censorship, potentially taking our site offline entirely, and it looms as a threat on the horizon. This exacerbates the chilling effect and the urgency of obtaining relief. In essence, Defendants' foreign injunction is a loaded weapon that they could point at any number of U.S.-based services to compel worldwide censorship of

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

1  KGE. Every moment it remains in effect and unrestrained by a U.S. court, we are at risk of
2  further irreparable harm.

3  　　　13.　　**SEO Expertise and Technical Observations**: I have studied and practiced
4  search engine optimization (SEO) for over 8 years, including managing website optimization
5  for more than 20 sites across various industries, monitoring search rankings daily using tools
6  like Google Search Console[2], Ahrefs[3], SEMrush[4], and Google Analytics[5], and successfully
7  recovering multiple sites from algorithmic penalties and manual de-indexing actions. Through
8  this work, I have become familiar with how search engines index content, how de-indexing
9  manifests in search results, and how to identify the difference between normal algorithmic
10 ranking changes and manual suppression actions taken by search engines. This practical
11 experience enables me to distinguish between normal ranking fluctuations and deliberate
12 suppression or de-indexing, which directly informs my observations and conclusions about the
13 impact of the Defendants' actions on KGE's website visibility.

14 　　　14.　　**Irreparable Harm to KGE – Loss of Audience and Critical Timing**: The
15 suppression of KGE's website has inflicted, and continues to inflict, irreparable harm on KGE
16 and on the public we serve. Since Google's de-indexing took effect in October, traffic to
17 KGE's website has plummeted by more than 90%. In other words, we have lost most of our
18 readership literally overnight. This is a catastrophic loss of audience, influence, and reach for

---

[2] **Google Search Console**. A free Google platform that reports how a site appears and performs in Google Search, including indexing status, search queries, sitemaps, and Core Web Vitals. See Google LLC, **Search Console**, Google Search Central, https://search.google.com/search-console/about (last visited Oct. 27, 2025).
[3] **Ahrefs**. A commercial SEO suite offering site audits, backlink and competitive analysis, keyword research, and rank tracking. See Ahrefs Pte. Ltd., **Ahrefs—All-in-one SEO Toolset**, https://ahrefs.com (last visited Oct. 27, 2025).
[4] **Semrush**. An online marketing platform providing SEO, PPC, content, and competitive intelligence tools such as keyword research, site audits, and position tracking. See Semrush Holdings, Inc., **Semrush**, https://semrush.com (last visited Oct. 27, 2025).
[5] **Google Analytics**. Google's analytics service (GA4) that measures website and app traffic and user behavior across sessions and devices. See Google LLC, **Google Analytics**, https://marketingplatform.google.com/about/analytics/ (last visited Oct. 27, 2025).

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

a small community-based publisher like us. Our reporting was reaching hundreds of readers per day through search discovery, but now it reaches only a trickle — mostly those who already knew our direct URL or followed niche links. This drastic decline, on the order of a 90% drop in visitors globally, effectively stifles KGE's voice. Furthermore, our analytics show a 95% drop in U.S. traffic. The people who need to see our information simply are not seeing it. We cannot interact with, inform, or empower the public as we did before.

    a. The timing of this suppression is especially damaging. Based on public documents posted on our website, emails received at our [KurrabaGroup@proton.me](mailto:KurrabaGroup@proton.me) account, and discussions in our Telegram group, local residents in Sydney are currently engaged in administrative and judicial processes to challenge aspects of the project, including filing formal objections, appeals, and preparing for hearings. Our reporting has provided these residents with documentation and evidence relevant to their submissions. With our site now invisible in search results, these residents cannot access the information they previously could. The suppression coincides with specific administrative deadlines for community objections and appeal periods that are currently running. Each day that KGE's content remains hidden is a day when community members cannot access information relevant to these time-sensitive proceedings. Once these administrative windows close, the opportunity for community input based on our reporting will be permanently lost. The harm compounds daily as more people search for information about the development but cannot find our reporting during these critical decision-making periods.

    b. Similarly, prospective investors or business partners who might consider involvement with Kurraba Group are denied access to a fuller picture of Mr. Smith's and Kurraba Group's past conduct. Before the de-indexing, we knew that even some U.S.-based investors found our site and were educated by it. As a KGE member with authorized

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

access to our shared email account, I note that several individuals reached out to KGE earlier to say that our reporting provided them with essential insights they would not have gained from Defendants' own statements. Now, those kinds of readers will not easily find our work. This creates a one-sided information environment that favors Defendants: only their self-promotional materials and controlled narrative are readily visible, while critical or corrective reporting is suppressed. Once again, this is harm that occurs anew each day, as more people search for information and find only what Defendants want them to see.

15. **Irreparable Harm – Damage to KGE that Cannot Be Repaired**: The injuries that KGE is suffering due to this suppression cannot be compensated by money damages and cannot be undone after the fact. If our site remains hidden for weeks or months and then is later restored, we will not simply regain our lost time, audience, or momentum. During this suppression period, critical administrative decisions about the development may be finalized without the public having access to our reporting. Internet visibility, particularly via search engines, develops over time and is fragile. We worked hard to build an audience and search presence; once that presence is disrupted or erased, it is extremely difficult to return to the prior status quo. When a site is de-indexed or de-ranked by Google for a significant period, its prior rankings and prominence do not automatically return, even after the censorship is lifted. The complex algorithms and user behavior mean that being absent from results for an extended period can permanently stunt the site's reach. In short, the damage to our visibility and readership grows by the day and cannot be retroactively fixed. Every day of lost readership is gone forever, and the ripple effects — lost references, fewer people sharing our content, etc. — make it even harder to re-establish our platform later. This kind of harm is quintessentially irreparable.

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

a. Moreover, KGE's reputation is being harmed by the very fact of this suppression. By treating our content as unlawful or subject to removal, we are essentially being branded, in the eyes of the public and internet platforms, as publishers of defamatory or illegal material. KGE maintains that its content is truthful and protected speech. We know our content is truthful and legally protected, but the stigma of being "blacklisted" by Google or subject to a court injunction is real. This tarnishes KGE's standing as a reliable source of information and could deter readers and other platforms from engaging with our content, even beyond the injunction's duration. Courts have recognized that such reputational harm can constitute irreparable injury, especially when a speaker of lawful truth is painted as a wrongdoer. Here, KGE's speech is fully protected under U.S. law, yet we are being treated, by virtue of the foreign order, as if we committed libel. This situation is hurting our credibility in a way that cannot be quantified or compensated for later.

b. Finally, I want to emphasize that the deprivation of KGE's First Amendment rights, even for a short period, is an irreparable harm in itself. It is my understanding, and a fundamental principle of law, that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury". I can attest from personal experience that this is not just a legal maxim but a palpable reality: each day that we are prevented from speaking to our audience inflicts a real injury on our cause, our organization, and the community conversation. No later court victory can give us back the days and weeks during which our voice was silenced on this issue of public importance. This ongoing restraint on speech is exactly the type of harm that courts consider irreparable, and I feel its weight each day the injunction remains in effect.

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

16. **Chilling Effect on Speech**: Defendants' actions have also created a profound chilling effect on expressive activity, both within KGE and in the broader community. Within our group, some contributors have grown apprehensive about continuing to post new content on the website or social media. Seeing how easily Defendants leveraged a foreign court order to shut down our visibility, our members are understandably worried that they could be personally targeted next. The fact that Defendants chose to sue an uninvolved person, Mr. Williams, to silence KGE sends a message that anyone even tangentially associated with us could be dragged into costly legal battles. This fear is real: KGE's contributors value their anonymity because they fear retaliation, and those fears have only been reinforced by the events of the past month. I have had discussions with other members where they expressed hesitation to continue our investigative activities at the same pace, out of concern that Defendants or others might seek further legal punishment against us individually. Since the court order, fewer members are posting each day. This kind of self-censorship is exactly what Defendants likely intended to provoke, and it seriously undermines our ability to continue publishing hard-hitting content. Despite personal concerns about retaliation, I am providing this declaration because protecting free speech is essential.

   a. The chilling effect extends beyond our group. As a result of our reporting, numerous local residents and insiders with knowledge about Kurraba Group have reached out to KGE privately to share tips and stories. Many of these individuals, however, have made it clear that they are too afraid to come forward publicly. The Defendants have created a climate of intimidation: tens of local citizens have contacted KGE with their own stories of misconduct and threats by Kurraba Group and Nick Smith, yet they are too afraid to speak publicly due to the chilling effect of the Defendants' tactics. This widespread fear among people who might otherwise blow the whistle or corroborate our reporting highlights the broader public harm caused by Defendants' aggressive

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

censorship strategy. By silencing KGE and threatening anyone who might be associated with it, Defendants are not only suppressing our speech but also deterring other community members from exercising their free speech. The public interest is severely disserved by this: important information about a matter of civic importance is being suppressed, and potential witnesses or speakers are muzzled by fear.

b. **Impact on Public Discourse**: The harm here is not limited to KGE as an organization; it affects the community and public discourse as a whole. When KGE's content is suppressed and people are afraid to speak, the public is deprived of access to information on matters of public concern. The First Amendment rests on the premise that an informed citizenry, exposed to "the widest possible dissemination of information from diverse and antagonistic sources," is essential to the welfare of the public. Defendants' actions undermine this principle by narrowing the range of information available about their project to only what they approve. This not only injures us and our readership, but it also harms the community's right to know. The chilling effect and suppression have led to a palpable loss of robust public debate over the Kurraba Group development. Community meetings, online forums, and social media discussions that would normally reference or draw on KGE's reporting are now lacking that input, skewing the discourse. The public interest is thus irreparably harmed each day that this gag persists, as critical voices are silenced and only the Defendants' narrative is amplified.

17. **Conclusion**: In sum, KGE is suffering ongoing and compounding harm each day that our website remains suppressed due to the Australian injunction and Defendants' enforcement actions. Our website traffic has collapsed by over 90%, we have lost our ability to inform the public about matters of significant concern, and our contributors and sources are afraid to continue their work. The suppression prevents the public from accessing information

**DECLARATION OF PLAINTIFF REPRESENTATIVE JAMES SMITH**

1 about a controversial development during critical administrative proceedings. These harms

2 cannot be undone or compensated after the fact. Each day of continued suppression causes

3 fresh injury to KGE's mission and to public discourse. I make this declaration to verify the facts

4 underlying KGE's request for relief and to document the ongoing harm to our organization and

5 the communities we serve.


I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on: October 28, 2025                Signed under penalty of perjury,


                                             /s/*James Smith*
                                             _____
                                             James Smith