Derek S. Khanna (Cal. Bar No. 308563)
706 Tesoro Road
Monterey, CA 93940
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com

Mark I. Bailen (D.C. Bar No. 459623), *Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No. 4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff, Kurraba Group Exposed*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **Kurraba Group Exposed**, an unincorporated association,<br><br>   Plaintiff,<br><br> v.<br><br>**Kurraba Group Pty Ltd,** a New South Wales, Australia, private limited company, and<br><br>**Nicholas "Nick" Mark Smith**, an individual residing in New South Wales, Australia,<br><br>   Defendants. | Case No. _____<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

## TABLE OF CONTENTS

*I. INTRODUCTION* ......................................................................................................... **6**

*II. FACTUAL BACKGROUND* ...................................................................................... **10**

*III. LEGAL STANDARD FOR INJUNCTIVE RELIEF* ............................................... **12**

*IV. LEGAL ARGUMENT* ............................................................................................... **13**

   *A. Plaintiff's Investigative Reporting and Watchdog Journalism Represents Core First Amendment Activity* .................................................................................................**13**

   *B. Plaintiff Is Likely to Succeed on the Merits* ..............................................................**14**
      1. The Australian Order Violates the SPEECH Act and Cannot Be Recognized ...........................14
      2. The Australian Order Violates Core First Amendment Principles ...........................................17
      3. The Australian Proceedings Violated Due Process .................................................................19

   **4. Plaintiff Will Suffer Irreparable Harm Absent an Injunction** .........................................**20**

   **D. The Balance of Equities Tips Sharply in Plaintiff's Favor** ............................................**22**

   **E. An Injunction Is in the Public Interest** ...........................................................................**23**

   **E. The Court Should Issue the Requested Injunction Without Bond** .................................**25**

*V. CONCLUSION* ............................................................................................................ **27**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

## TABLE OF AUTHORITIES

*Abdullah v. Sheridan Square Press, Inc.*, 1994 WL 419847, at *3 (S.D.N.Y. May 3, 1994) .15

*Abrams v. United States*, 250 U.S. at 630 (Holmes, J., dissenting) ........................................25

*Alexander v. United States*, 509 U.S. 544, 550 (1993) ....................................................11, 16

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ...................12

*American Civil Liberties Union v. Reno*, 217 F.3d 162, 181 (3d Cir. 2000) ...........................24

*Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) ..................................................................19, 22

*Associated Press v. United States*, 326 U.S. 1, 20 (1945) ....................................................21

*Bachchan v. India Abroad Publications, Inc.*, 154 Misc. 2d 228, 235 (N.Y. Sup. Ct. 1992).11, 18, 27

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)..........................................................7

*Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)............................................26

*Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001) ....................................................................13

*Board of Education v. Pico*, 457 U.S. 853, 867 (1982) (plurality opinion)......................12, 23

*Bose Corp. v. Consumers Union*, 466 U.S. 485, 510 (1984)....................................................11

*Burnham v. Superior Court*, 495 U.S. 604, 610 (1990)..........................................................10

*CBS Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) ........................18

*Citizens United v. FEC*, 558 U.S. at 370 ..............................................................................24

*Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009)26

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ..................................................................................................................................26

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967).............................................................15

*Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ....................................26

*Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ................................................................21

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (plurality opinion) ........................................................................................................................14, 16

*e360Insight, LLC v. The Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007) ...................22

*Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d at 507..........................................................................23

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ....................................................................9, 13, 21

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) .........................................14, 24

*Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992) ...............................19

*Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015) (en banc) ...............................17, 22

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) .........................................................11

*Google Inc. v. Equustek* ........................................................................................................24

*Hilton v. Guyot*, 159 U.S. 113, 205 (1895) ..........................................................................20

*Hubbard v. City of San Diego*, No. 24-4613, 2025 WL 1572736, at *5 (9th Cir. June 4, 2025) ...........................................................................................................................................13

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988)...........................................8, 22

*Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)..................................................26

*Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)....................................................25

*Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) ....................................12

*Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) ............................................................12

*Matal v. Tam*, 582 U.S. 218, 245 (2017) .........................................................................18, 25

*Matusevitch v. Telnikoff*, 877 F. Supp. 1, 4 (D.D.C. 1995) ...............................................7, 16

*Meinecke v. City of Seattle*, No. 23-35481, 2024 WL 1714473, at *3 (9th Cir. Apr. 18, 2024) ...........................................................................................................................................9, 22

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).....................................................23

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).......................................................16

*Mills v. Alabama*, 384 U.S. 214, 218 (1966) ........................................................................13

*Moody v. NetChoice, LLC,* 603 U.S. 707 (2024)..............................................................21, 25

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ........................7, 19
*Naoko Ohno v. Yuko Yasuma*, 723 F.3d at 1003 (9th Cir. 2013) ...........................................9, 14
*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ...........................................7, 17, 21
*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......................................................8, 15
*New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) ......................17
*Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014) .................................16
*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971) ......................................8
*Pacific Gas & Electric Co. v. Public Utilities Commission*, 475 U.S. 1, 8 (1986) (plurality
    opinion) ..............................................................................................................................13
*Packingham v. North Carolina*, 582 U.S. 98, 107 (2017) ........................................8, 18, 24
*Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information
    Technologies, Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) .....................................................28
*Pennoyer v. Neff*, 95 U.S. 714, 732 (1877) ...........................................................................19
*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) ...........................11, 15
*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324
    U.S. 806, 814-15 (1945) .........................................................................................20, 23, 27
*Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969) ..............................................6
*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ..............................................................18
*Reno v. American Civil Liberties Union*, 521 U.S. 844, 850, 851 (1997) ............16, 18, 19, 24
*Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) .................................................22
*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ..13, 21
*Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002) ............12, 21
*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) .....................12
*Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947) ....................................................................23
*Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) ..........................................................6, 16, 18, 22
*Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) ........................................19
*Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ........................................................................6
*Thornhill v. Alabama*, 310 U.S. 88, 102 (1940) ....................................................................24
*Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013) ...................7, 15, 16
*United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality opinion) ................................18
*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ...............................21
*Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) .........................25
*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ...........................8, 12
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ...................................7
*X Corp. v. Bonta*, No. 116 F.4th 888, 903-04 (9th Cir. 2024) .......................................9, 21, 23
*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc) ......8, 25

**Statutes**
28 U.S.C. § 2201 ......................................................................................................................28
28 U.S.C. § 2467(d)(1)(A) .......................................................................................................20
28 U.S.C. § 4102 ......................................................................................................................27
28 U.S.C. § 4102(a)(1) .............................................................................................................14
28 U.S.C. § 4102(a)(1)(A) ........................................................................................................12
Communications Decency Act, 47 U.S.C. § 230 ......................................................................28
*Defamation Act 2005* (NSW) § 25 ...........................................................................................15
SPEECH Act .................................................................................................................... passim
U.S.C. § 4102(a)(1)(B) .............................................................................................................17

**Rules**
Federal Rule of Civil Procedure 65(c) .....................................................................................25

**Other Authorities**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

156 Cong. Rec. S6934 (daily ed. Aug. 3, 2010) ........................................................................15

H.R. Rep. No. 111-154 (2009)..................................................................................................15

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

1    **I. INTRODUCTION**

2       Plaintiff Kurraba Group Exposed ("KGE") submits this memorandum of law in support

3    of its motion for a temporary restraining order, preliminary injunction, and permanent

4    injunction. KGE is a San Francisco-based online publisher that has engaged in core political

5    speech and investigative reporting about Defendants' real estate development activities. This

6    speech embodies the very essence of protected expression under the First Amendment,

7    including criticism of corporate conduct and matters of significant public interest. *See Snyder*

8    *v. Phelps*, 562 U.S. 443, 451-52 (2011) (speech on issues of public concern occupies the

9    "highest rung of the hierarchy of First Amendment values"). In response, Defendants Kurraba

10   Group Pty Ltd and its CEO Nicholas "Nick" Smith secured an *ex parte* interim injunction from

11   an Australian court, obtained under plaintiff-friendly Australian defamation/privacy law that

12   lacks the robust protections afforded by U.S. constitutional jurisprudence, that gagged KGE's

13   website and ordered removal of its content from the internet. Defendants then invoked that

14   foreign order to induce Google LLC ("Google") to geo-block KGE's website in Australia and

15   to remove or de-index KGE's content in search results globally, effectively suppressing

16   Plaintiff's reporting from public view and depriving American citizens of their right to receive

17   information. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that

18   the Constitution protects the right to receive information and ideas."); *see also Red Lion*

19   *Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969) (the right of the public to receive suitable

20   access to social, political, aesthetic, moral, and other ideas and experiences is crucial to the

21   First Amendment).

22       This case is a paradigmatic example of libel tourism, where a litigant circumvents U.S.

23   free speech safeguards by suing in a foreign forum with weaker protections. The practice has

24   been explicitly condemned by Congress through the SPEECH Act, which was enacted

25   specifically to combat such forum shopping. *See Trout Point Lodge, Ltd. v. Handshoe*, 729

26    F.3d 481, 487 (5th Cir. 2013) (noting that Congress enacted the SPEECH Act to protect

27    American authors and publishers from foreign defamation judgments that do not comport with

28    the First Amendment); *see also Matusevitch v. Telnikoff*, 877 F. Supp. 1, 4 (D.D.C. 1995)

29    (refusing to enforce a British libel judgment on First Amendment grounds, noting the

30    incompatibility with U.S. protections). Plaintiff, which is operated by U.S. activists and hosted

31    on U.S. servers, was not even a party to the foreign proceeding (Defendants sued the wrong

32    individual in Australia), rendering the entire proceeding a nullity as to KGE under basic due

33    process principles. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

34    (1950) (fundamental requirement of due process is notice and opportunity to be heard); *see

35    also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (due process

36    requires that a defendant be "haled into court" only where it has minimum contacts, ensuring

37    fairness and foreseeability). Through this gambit, Defendants have sought to silence speech

38    that they could not restrain under U.S. law, exploiting procedural loopholes and jurisdictional

39    gamesmanship to achieve what the First Amendment forbids.

40          The foreign court's interim injunction, which functions as a prior restraint on speech, is

41    repugnant to fundamental First Amendment principles and would never be countenanced by

42    an American court. Indeed, U.S. courts have long recognized a "heavy presumption" that any

43    prior restraint on speech is unconstitutional. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

44    (1976). The Supreme Court has repeatedly emphasized that "[a]ny system of prior restraints of

45    expression comes to this Court bearing a heavy presumption against its constitutional validity."

46    *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints are "the most serious

47    and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n*, 427

48    U.S. at 559. The Australian order here, issued without notice to KGE, without proof of falsity,

49    without consideration of actual malice, and without the procedural safeguards required by U.S.

50    law, exemplifies precisely the type of censorship our Constitution forbids. *See Organization

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

51   *for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971) (designating a publisher's conduct as

52   invasion of privacy "is not sufficient to support an injunction against peaceful distribution of

53   informational literature"); *see also Packingham v. North Carolina*, 582 U.S. 98, 107 (2017)

54   (striking down restrictions on online speech, noting that social media and the Internet are "the

55   most important places... for the exchange of views").

56          KGE now seeks narrowly tailored relief to prevent irreparable injury to its First

57   Amendment rights and to U.S. public policy. Specifically, Plaintiff requests that this Court: (1)

58   Defendants' Australian orders are repugnant to U.S. free speech principles and unenforceable

59   in the United States pursuant to the SPEECH Act and longstanding principles of international

60   comity; and (2) enjoin Defendants from enforcing or attempting to enforce the Australian

61   court's orders in the U.S. (or from taking any further steps to censor KGE's website based on

62   those orders), consistent with the principle that foreign judgments cannot be used to circumvent

63   constitutional protections, *see Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th

64   Cir. 2006) (en banc).

65          Such relief is essential to prevent the extraterritorial imposition of foreign censorship

66   in conflict with U.S. law, to prevent the balkanization of the internet along the lines of the most

67   restrictive speech regimes, and to uphold the heightened protections for speech on public

68   matters required by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and its progeny. *See*

69   *also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988) (extending *Sullivan*

70   protections to intentional infliction of emotional distress claims involving public figures,

71   underscoring the need for "breathing space" in public debate).

72          As demonstrated below, KGE easily satisfies the requirements for a TRO and

73   preliminary injunction, as outlined in *Winter v. Natural Resources Defense Council, Inc.*, 555

74   U.S. 7 (2008). Plaintiff is likely to succeed on the merits of its claims under the SPEECH Act

75   and First Amendment, because the foreign defamation order at issue cannot be enforced or

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

76    recognized here without contravening U.S. law and fundamental constitutional principles. The

77    SPEECH Act creates an absolute bar to recognition of foreign defamation judgments that do

78    not meet First Amendment standards, and this Australian order falls far short of those

79    standards. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1000 (9th Cir. 2013) ("Enforcing

80    a defamation or libel judgment absent a finding of malice stands in direct tension with

81    constitutional principles, because it punishes speech on the basis of content."). Absent

82    injunctive relief, Plaintiff will suffer immediate and irreparable harm to its First Amendment

83    rights and to its ability to disseminate its reporting, harm that is presumed irreparable as a

84    matter of law and is already ongoing. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss

85    of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

86    irreparable injury."); *see also Meinecke v. City of Seattle*, No. 23-35481, 2024 WL 1714473,

87    at *3 (9th Cir. Apr. 18, 2024) (affirming irreparable harm in First Amendment case involving

88    chalking on sidewalks as protected expression). The balance of hardships sharply favors

89    Plaintiff, as Defendants will suffer no cognizable injury from being restrained from pursuing

90    an unlawful censorship order obtained through forum shopping, whereas Plaintiff faces the loss

91    of constitutional rights and the very purpose of its website. Finally, an injunction would

92    strongly serve the public interest by reinforcing core free-speech values, safeguarding the

93    public's right to receive information on matters of public concern, preventing the chilling effect

94    on other U.S. speakers who might be targeted by similar foreign censorship efforts, and

95    upholding Congress's policy (embodied in the SPEECH Act) against domestic enforcement of

96    foreign libel judgments that undercut First Amendment standards. *See X Corp. v. Bonta*, No.

97    116 F.4th 888, 903-04 (9th Cir. 2024) (granting preliminary injunction against California

98    content moderation law on First Amendment grounds, noting the public interest in preventing

99    government overreach on online speech).

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

100        For these reasons, and as detailed further below, Plaintiff respectfully urges the Court

101    to grant the requested injunctive relief and to issue an order barring any enforcement of the

102    Australian injunction in the U.S., prohibiting any further censorship efforts by Defendants

103    based on that foreign order, and to thereby help ensure that Plaintiff's content is fully restored

104    on Google's search platform with equal visibility.

105    **II. FACTUAL BACKGROUND**

106        **Plaintiff's Investigative Reporting**: Plaintiff Kurraba Group Exposed (KGE) is an

107    unincorporated association of community activists based in California that operates an

108    independent news and commentary website hosted on servers physically located in the United

109    States. KGE's mission is to publish investigative reports and commentary regarding Defendant

110    Kurraba Group's real estate development projects, notably a controversial "life sciences"

111    development at 100 Botany Road in Sydney, and to expose alleged corruption, misconduct,

112    environmental concerns, and irregularities affecting the public interest.

113        **Defendants' Australian Lawsuit and Gag Order**: Rather than confront KGE's

114    criticisms in the marketplace of ideas, the traditional American approach to contested speech,

115    Defendants Kurraba Group and Nick Smith turned to a foreign court as a means to quash the

116    speech. In October 2025, they filed a defamation and privacy lawsuit in New South Wales,

117    Australia, against an Australian community advocate, Michael Williams. But Williams is not

118    actually responsible for the KGE site. They targeted the wrong party. This fundamental error

119    in party identification renders any resulting judgment void as to KGE. *See Burnham v. Superior*

120    *Court*, 495 U.S. 604, 610 (1990) (due process requires jurisdiction over the actual defendant,

121    not a proxy). Despite being informed that KGE's operators are U.S.-based and that Mr.

122    Williams lacks authority over the website, Defendants forged ahead in Australia, a jurisdiction

123    known for plaintiff-friendly defamation laws that lack meaningful First Amendment analogues,

124    thereby exploiting jurisdictional differences to evade U.S. constitutional safeguards. This

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

125  deliberate forum shopping violates principles of international comity and represents precisely

126  the abuse Congress sought to prevent through the SPEECH Act. *See* S. Rep. No. 111-224, at 3

127  (2010) (SPEECH Act intended to prevent foreign plaintiffs from "undermining American free

128  speech rights by suing American authors in foreign jurisdictions"); *see also Bachchan v. India*

129  *Abroad Publ'ns Inc.*, 154 Misc. 2d 228, 235 (N.Y. Sup. Ct. 1992) (refusing to enforce English

130  libel judgment, as it would jeopardize First Amendment protections).

131       In that *ex parte* proceeding, conducted without notice to or participation by KGE, an

132  Australian court, applying Australian law that provides no meaningful protection for speech on

133  matters of public concern, issued an interim injunction that gagged Plaintiff's website and

134  ordered KGE's online content removed. This broad prior restraint forbids KGE's speech about

135  Defendants wholesale, despite the fact that such speech would be protected under U.S. law,

136  especially given its public-issue context and the heightened protections for criticism of public

137  figures and matters of public concern. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342

138  (1974) (public figures must prove actual malice); *Philadelphia Newspapers, Inc. v. Hepps*, 475

139  U.S. 767, 776 (1986) (plaintiff bears burden of proving falsity on matters of public concern).

140  The Australian interim order was issued without notice to or participation by KGE (which was

141  not a defendant there), without any finding of falsity under the burden of proof required by

142  U.S. law, and without the substantive safeguards that American law requires, such as proof of

143  falsity or actual malice for speech about public figures or matters of public concern. *See Bose*

144  *Corp. v. Consumers Union*, 466 U.S. 485, 510 (1984) (requiring independent appellate review

145  of actual malice findings); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) (prior

146  restraints are presumptively invalid, especially when imposed without adversarial process).

147       **Defendants' Weaponization of Google to Enforce Foreign Censorship**: After

148  obtaining their *ex parte* foreign gag order, Defendants leveraged it to induce Google to

149  implement a global censorship regime against KGE's content. Google, faced with potential

150   contempt proceedings in Australia and lacking clear guidance on the extraterritorial reach of

151   foreign orders, geo-blocked KGE's website in Australia and dramatically reduced its visibility

152   in search results worldwide. This de facto enforcement of a foreign censorship order on U.S.

153   soil violates both the letter and spirit of the SPEECH Act, which prohibits giving effect to

154   foreign defamation judgments that do not meet First Amendment standards. *See* 28 U.S.C. §

155   4102(a)(1)(A). The practical effect has been to impose Australian speech restrictions on

156   American speakers and, critically, on the American public's right to access information. *See*

157   *Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) (First Amendment protects the right to

158   "receive information and ideas"); *see also Board of Educ. v. Pico*, 457 U.S. 853, 867 (1982)

159   (plurality opinion) (the right to receive ideas is essential to informed citizenship).

160   **III. LEGAL STANDARD FOR INJUNCTIVE RELIEF**

161          A plaintiff seeking a temporary restraining order or preliminary injunction must

162   establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent an

163   injunction; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction is in

164   the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

165   The Ninth Circuit also recognizes a sliding-scale approach where "serious questions going to

166   the merits" combined with a balance of hardships that "tips sharply" in plaintiff's favor can

167   support preliminary relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

168   Cir. 2011); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

169   2013) (applying sliding-scale in environmental speech case). In First Amendment cases, the

170   latter three factors often merge because constitutional violations presumptively constitute

171   irreparable harm and injunctions protecting constitutional rights are presumptively in the public

172   interest. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009); *see also*

173   *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959 (reversing district court's denial of

174   plaintiff's request for a preliminary injunction where "it is always in the public interest to

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

175    prevent the violation of a party's constitutional rights") (internal citation omitted); *Hubbard v.*

176    *City of San Diego*, No. 24-4613, 2025 WL 1572736, at *5 (9th Cir. June 4, 2025) (affirming

177    injunction in yoga instruction case as protected speech, merging factors due to First

178    Amendment stakes).

179        Importantly, when First Amendment rights are at stake, courts apply these factors with

180    particular solicitude for the constitutional interests involved. *See Pacific Gas & Electric Co. v.*

181    *Public Utilities Commission*, 475 U.S. 1, 8 (1986) (plurality opinion) ("For corporations as for

182    individuals, the choice to speak includes within it the choice of what not to say."). The Supreme

183    Court has consistently held that "the loss of First Amendment freedoms, for even minimal

184    periods of time, unquestionably constitutes irreparable injury," mandating injunctive relief

185    where speech rights are threatened. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Roman*

186    *Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("The loss of

187    First Amendment freedoms... unquestionably constitutes irreparable injury.").

188    **IV. LEGAL ARGUMENT**

189        *A.  Plaintiff's Investigative Reporting and Watchdog Journalism Represents Core*

190            *First Amendment Activity*

191        KGE's content, published on U.S. servers by U.S. contributors exercising their

192    constitutional rights from U.S. soil, squarely addresses matters of public concern, including

193    potential regulatory violations, environmental impacts, community displacement, and the

194    intersection of corporate power with local governance. Such speech receives the highest level

195    of constitutional protection.  *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("Whatever

196    differences may exist about interpretations of the First Amendment, there is practically

197    universal agreement that a major purpose of that Amendment was to protect the free

198    discussion of governmental affairs."); *see also Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001)

199    (protecting media dissemination of information on matters of public concern, even if obtained

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

200    unlawfully by third parties); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S.

201    749, 758-59 (1985) (plurality opinion) (speech on matters of public concern receives special

202    protection); *see also First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) (corporate

203    speech on public issues is fully protected, as the First Amendment does not distinguish

204    between speakers).

205        *B.  Plaintiff Is Likely to Succeed on the Merits*

206        Plaintiff's likelihood of success is overwhelming because the Australian defamation

207    order cannot be recognized or enforced under U.S. law on multiple independent grounds: (A)

208    it violates the SPEECH Act's explicit prohibitions; (B) it contravenes fundamental First

209    Amendment principles; (C) it fails basic due process requirements; and (D) it conflicts with

210    Section 230 of the Communications Decency Act. Any one of these grounds would suffice;

211    together, they compel the conclusion that Defendants' censorship efforts must be enjoined. *See*

212    *Naoko Ohno v. Yuko Yasuma*, 723 F.3d at 1003 (9th Cir. 2013) (barring enforcement under

213    SPEECH Act, noting multiple overlapping protections).

214        **1. The Australian Order Violates the SPEECH Act and Cannot Be Recognized**

215        The Securing the Protection of our Enduring and Established Constitutional Heritage

216    Act (SPEECH Act), 28 U.S.C. §§ 4101-4105, categorically prohibits U.S. courts from

217    recognizing or enforcing foreign defamation judgments that fail to meet First Amendment

218    standards. The statute provides that "a domestic court shall not recognize or enforce a foreign

219    judgment for defamation" unless the foreign court's jurisdiction was proper and "the

220    defamation law applied in the foreign court's adjudication provided at least as much protection

221    for freedom of speech and press... as would be provided by the [F]irst [A]mendment." 28

222    U.S.C. § 4102(a)(1). This effectively bars enforcement, rather than a balancing test, against the

223    recognition of speech-restrictive foreign judgments. *See Trout Point Lodge, Ltd. v. Handshoe*,

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

224    729 F.3d 481, 487-89 (5th Cir. 2013) (affirming denial of recognition to Canadian defamation

225    judgment under SPEECH Act).

226            The legislative history confirms Congress's intent to create a robust shield against libel

227    tourism. The House Report states that the Act was designed to "protect American authors,

228    journalists, and publishers from foreign defamation judgments that undermine the First

229    Amendment." H.R. Rep. No. 111-154, at 2 (2009). Senator Patrick Leahy, a principal sponsor,

230    explained that the Act would "help ensure that libel tourists do not attempt to chill speech in

231    the United States." 156 Cong. Rec. S6934 (daily ed. Aug. 3, 2010). The Act applies not only

232    to final judgments but also to any attempt to give effect to foreign speech-restrictive orders in

233    the United States.

234            Australian defamation law falls far short of First Amendment standards in multiple

235    critical respects:

236            **Burden of Proof**: Australian law places the burden on defendants to prove truth as a

237    defense, whereas U.S. law requires plaintiffs to prove falsity when the speech involves matters

238    of public concern. Compare *Defamation Act 2005* (NSW) § 25 with *Philadelphia Newspapers,*

239    *Inc. v. Hepps*, 475 U.S. 767, 776 (1986). This burden-shifting alone renders Australian

240    judgments unenforceable.

241            **Actual Malice Standard**: Australian law does not require public figures or officials to

242    prove actual malice, knowledge of falsity or reckless disregard for truth. This fundamental

243    protection, established in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and extended

244    in *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), has no meaningful equivalent in

245    Australian jurisprudence. The absence of this protection alone mandates non-recognition. *See*

246    *Abdullah v. Sheridan Square Press, Inc.*, 1994 WL 419847, at *3 (S.D.N.Y. May 3, 1994) (pre-

247    SPEECH Act case refusing to enforce British libel judgment lacking actual malice

248  requirement); *see also Matusevitch v. Telnikoff*, 877 F. Supp. at 4 (D.D.C. 1995) (similar refusal

249  of English judgment).

250      **Prior Restraints**: Australian courts readily issue interim injunctions restraining speech

251  pending trial, as occurred here. U.S. law subjects prior restraints to extraordinary scrutiny and

252  presumes them unconstitutional. *See Alexander v. United States*, 509 U.S. 544, 550 (1993)

253  ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually

254  forbid speech activities—are classic examples of prior restraints."); *see also Reno v. ACLU*,

255  521 U.S. at 872 (striking internet prior restraints). The Australian court's willingness to gag

256  KGE's website through an *ex parte* order demonstrates a fundamentally different approach to

257  free expression, one that is incompatible with our constitutional order.

258      **Opinion Protection**: U.S. law absolutely protects statements of opinion that cannot be

259  proven false. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Australian law

260  provides more limited protection for "honest opinion," requiring a factual basis that courts

261  scrutinize. This disparity means that core political commentary protected in the U.S. faces

262  liability in Australia. *See also Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir.

263  2014) (extending opinion protection to online bloggers).

264      **Public Concern Doctrine**: The First Amendment provides heightened protection for

265  speech on matters of public concern, requiring private-figure plaintiffs to prove both falsity

266  and fault. *See Dun & Bradstreet*, 472 U.S. at 758-59. Australian law contains no comparable

267  doctrine, treating speech about corporate misconduct or development controversies the same

268  as purely private gossip. *See also Snyder v. Phelps*, 562 U.S. at 458 (protecting even offensive

269  speech on public matters).

270      Federal courts applying the SPEECH Act have consistently refused to enforce foreign

271  judgments from jurisdictions with similar disparities. In *Trout Point Lodge*, the Fifth Circuit

272  affirmed non-recognition of a Canadian judgment where Canadian law lacked the actual malice

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

273    standard and placed the burden of proving truth on defendants. 729 F.3d at 488-89. The court

274    emphasized that "the judgment fails under the SPEECH Act as a matter of law" where these

275    fundamental protections are absent. *Id*. at 495.

276         Here, the Australian interim injunction fails every aspect of the SPEECH Act test. It

277    was issued *ex parte* without requiring proof of falsity, without applying any actual malice

278    standard, and as a prior restraint that would be presumptively unconstitutional in the U.S. The

279    SPEECH Act compels non-recognition as a matter of law, and any attempt to enforce or give

280    effect to this order, whether directly through judicial proceedings or indirectly through private

281    censorship, violates federal statute and policy. *See* 28 U.S.C. § 4102(a)(1)(B) (prohibiting

282    enforcement where "the party opposing recognition... would not have been found liable" under

283    U.S. law).

**2. The Australian Order Violates Core First Amendment Principles**

285         Independent of the SPEECH Act, the Australian order cannot be enforced because it

286    violates fundamental First Amendment principles that no foreign judgment can override. The

287    Supreme Court has made clear that the First Amendment's protections extend to attempts to

288    suppress speech through foreign legal mechanisms. *See Garcia v. Google, Inc.*, 786 F.3d 733,

289    745 (9th Cir. 2015) (en banc) (dissolving injunction on online video, emphasizing First

290    Amendment limits on prior restraints in digital media).

291         **Prior Restraint Doctrine**: The Australian injunction is a quintessential prior restraint,

292    "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska*

293    *Press Ass'n*, 427 U.S. at 559. Prior restraints bear a "heavy presumption" of unconstitutionality

294    and are permissible only in the most exceptional circumstances, none present here. *See New*

295    *York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (Pentagon Papers case).

296    The Supreme Court has invalidated prior restraints even when national security was allegedly

297    at stake. *Id*. It defies logic and precedent to enforce a foreign prior restraint based merely on

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

298    alleged reputational harm to a corporate entity. *See CBS Inc. v. Davis*, 510 U.S. 1315, 1317

299    (1994) (Blackmun, J., in chambers) (even temporary prior restraint causes irreparable First

300    Amendment harm); *see also Reno v. ACLU*, 521 U.S. at 872 (applying prior restraint doctrine

301    to internet regulations).

302        Courts have specifically held that foreign injunctions restraining speech cannot be

303    enforced in the United States. In *Bachchan v. India Abroad Publications, Inc.*, 154 Misc. 2d

304    228, 235 (N.Y. Sup. Ct. 1992), the court refused to enforce an English injunction restraining

305    publication, holding that "the protection to free speech and the press embodied in [the First]

306    amendment would be seriously jeopardized by the entry of foreign [injunction] orders." The

307    principle applies with even greater force here, where the foreign order seeks to suppress

308    criticism of corporate conduct and matters of public concern.

309        **Content-Based Restriction**: The Australian order targets KGE's speech based on its

310    content, criticism of Defendants' business practices. Content-based restrictions on speech are

311    presumptively unconstitutional and subject to strict scrutiny. *See Reed v. Town of Gilbert*, 576

312    U.S. 155, 163 (2015). To survive strict scrutiny, the restriction must be narrowly tailored to

313    serve a compelling government interest. *Id*. Protecting corporate reputation from criticism does

314    not constitute a compelling interest sufficient to override First Amendment rights. *See Snyder

315    v. Phelps*, 562 U.S. 443, 458 (2011) (even "outrageous" speech on matters of public concern

316    protected); *see also United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality opinion) (lies

317    about military honors protected absent proof of concrete harm); *Matal v. Tam*, 582 U.S. 218,

318    245 (2017) (striking content-based trademark restrictions).

319        **Public Forum Doctrine**: The Internet is the modern public forum, "the most important

320    place[]... for the exchange of views." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017).

321    Defendants' attempt to banish KGE from this forum through foreign litigation strikes at the

322    heart of the public forum doctrine. The Supreme Court has held that complete bans on accessing

323    online platforms implicate fundamental First Amendment concerns. *Id*. at 1737. Using foreign

324    courts to achieve the same result cannot be permitted.

325          **Chilling Effect**: Enforcing the Australian order would chill protected speech far beyond

326    this case. If foreign plaintiffs can silence U.S. speakers by obtaining judgments abroad,

327    especially against defendants who are not correctly named, it would incentivize forum

328    shopping and create a "heckler's veto" whereby those with resources could silence critics by

329    finding the most plaintiff-friendly jurisdiction worldwide. *See Forsyth County v. Nationalist*

330    *Movement*, 505 U.S. 123, 134-35 (1992) (condemning heckler's veto doctrine). The First

331    Amendment does not permit such an end-run around constitutional protections. *See Reno v.*

332    *American Civil Liberties Union*, 521 U.S. 844, 877 (1997) (Internet speech cannot be regulated

333    based on most restrictive community standards); *see also Ashcroft v. ACLU*, 542 U.S. 656, 660

334    (2004) (striking content based restriction as overbroad chilling effect on online speech).

335          **3. The Australian Proceedings Violated Due Process**

336          The Australian order also cannot be enforced because it was obtained in violation of

337    basic due process principles. KGE was not a party to the Australian proceedings, received no

338    notice, and had no opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*,

339    339 U.S. 306, 313 (1950) ("An elementary and fundamental requirement of due process... is

340    notice reasonably calculated... to apprise interested parties of the pendency of the action."). A

341    judgment entered without jurisdiction over the actual party in interest is void and entitled to no

342    faith and credit. *See Pennoyer v. Neff*, 95 U.S. 714, 732 (1877); *see also Society of Lloyd's v.*

343    *Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (noting that enforcement of foreign judgment may

344    be declined where foreign procedures were not "fundamentally fair" and offend against "basic

345    fairness."). Moreover, Defendants' deliberate choice to sue the wrong party, which continued

346    even after they were informed of their error, constitutes litigation misconduct that should bar

347    any equitable relief. *See Precision Instrument Manufacturing Co. v. Automotive Maintenance*

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

348    *Machinery Co.*, 324 U.S. 806, 814-15 (1945) (party who comes to court with "unclean hands"

349    cannot obtain equitable relief). Courts have refused to enforce foreign judgments obtained

350    through procedural manipulation. *See Hilton v. Guyot*, 159 U.S. 113, 205 (1895) (comity does

351    not extend to judgments obtained by fraud or without due process). Under international

352    standards, enforcement requires that the foreign system provide impartial tribunals and

353    procedures compatible with due process. *See* 28 U.S.C. § 2467(d)(1)(A) (refusing enforcement

354    if foreign system incompatible with due process). Here, the *ex parte* nature and

355    misidentification of parties flout these requirements.

### 4. Plaintiff Will Suffer Irreparable Harm Absent an Injunction

357    Rather than address the substantive issues raised by community members, Kurraba Group and

358    Nick Smith responded with aggressive legal tactics aimed at silencing their critics. In

359    September 2025, Smith took an extraordinary measure: he filed an application for an

360    Apprehended Personal Violence Order (APVO), a protective order under Australian law

361    similar in function to a restraining order, against Michael Williams, claiming he feared for his

362    safety due to Williams' activism. This gambit, typically reserved for situations of stalking or

363    harassment, appeared to be a SLAPP-style abuse of process, repurposing a law enforcement

364    tool to intimidate a vocal opponent. There was no evidence of any actual violence or personal

365    threats by Williams; his conduct was limited to "public advocacy and legal protest, not threats

366    or violence," making the APVO request highly suspect. Observers noted that using an APVO

367    in a development dispute was virtually unprecedented and warned that courts frown on such

368    vexatious misuse of protective orders. As of the filing of this Complaint and motion for TRO

369    and preliminary relief, it is our understanding that the APVO matter has not resulted in any

370    finding against Williams; its primary significance here is that it illustrates Defendants'

371    willingness to employ any legal means to shut down criticism. This pattern of abusing legal

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

372    processes not only chills speech but also erodes trust in judicial systems, further emphasizing

373    the need for U.S. courts to intervene against such extraterritorial overreach.

374        The ongoing suppression of KGE's speech constitutes irreparable harm *per se*. The

375    Supreme Court has repeatedly held that "the loss of First Amendment freedoms, for even

376    minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427

377    U.S. 347, 373 (1976). This principle applies with particular force to prior restraints, which

378    inflict immediate and irreversible damage to free expression. *See Nebraska Press Ass'n*, 427

379    U.S. at 559; *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. at 18

380    (irreparable harm from even brief restrictions on religious speech).

381        Every day that KGE's website remains suppressed or de-indexed represents ongoing

382    constitutional injury that cannot be compensated through damages. *See Doe v. Harris*, 772 F.3d

383    563, 583 (9th Cir. 2014) ("ongoing violation of constitutional rights constitutes irreparable

384    injury"); *see also X Corp. v. Bonta*, 2024 WL 4061366, at *8 (9th Cir. Sept. 4, 2024)

385    (irreparable harm from compelled speech on social media platforms). The harm extends beyond

386    KGE to the public, which is deprived of access to information about matters of public concern.

387    *See Associated Press v. United States*, 326 U.S. 1, 20 (1945) (First Amendment "rests on the

388    assumption that the widest possible dissemination of information from diverse and antagonistic

389    sources is essential to the welfare of the public"); *see also Moody v. NetChoice, LLC,* 603 U.S.

390    707 (2024)*.* (public harm from restricting online discourse).

391        Moreover, the reputational harm to KGE from being branded as a publisher of unlawful

392    content, when its speech is fully protected under U.S. law, constitutes additional irreparable

393    injury. *See Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002)

394    (reputational harm can constitute irreparable injury). The chilling effect on KGE's future

395    speech and on other publishers who might face similar foreign censorship efforts compounds

396    the injury. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (self-

397    censorship due to fear of prosecution constitutes injury); *see also Ashcroft v. ACLU*, 542 U.S.

398    at 660 (chilling effect on internet speech).

399        The technological harm from Google's de-indexing is also irreparable. Search engine

400    rankings and visibility develop over time through complex algorithms; once disrupted, they

401    cannot simply be restored to their prior state. *See e360Insight, LLC v. The Spamhaus Project*,

402    500 F.3d 594, 599 (7th Cir. 2007) (interference with Internet presence causes irreparable harm);

403    *see also Garcia v. Google*, 786 F.3d at 745 (irreparable harm from takedown of online content).

404    Each day of suppression means lost readers, diminished influence, and reduced ability to

405    contribute to public discourse, harms that money cannot adequately remedy.

406        **D. The Balance of Equities Tips Sharply in Plaintiff's Favor**

407        The balance of equities overwhelmingly favors granting injunctive relief. Plaintiff faces

408    the loss of fundamental constitutional rights and the effective destruction of its publishing

409    platform. In contrast, Defendants face no legitimate hardship from being enjoined from

410    enforcing an order that violates U.S. law. *See Meinecke v. City of Seattle,* 99 F.4th 514 (9th

411    Cir. 2024) (balance tips sharply where First Amendment rights outweigh minimal government

412    burden).

413        Defendants cannot claim hardship from being prevented from violating the Constitution

414    and federal statutes. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) ("[T]he

415    government cannot suffer harm from an injunction that merely ends an unlawful practice.").

416    Any reputational interest Defendants claim is far outweighed by Plaintiff's First Amendment

417    rights. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52–53 (1988) (noting that emotional

418    distress and reputational harm cannot justify suppression of speech where First Amendment

419    protections apply); *see also Snyder v. Phelps*, 562 U.S. at 460 (reputational harm insufficient

420    to override speech protections).

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

421        Moreover, Defendants' choice to forum shop in Australia rather than pursue remedies

422    in the U.S., where they would have to meet U.S. Constitutional standards, demonstrates bad

423    faith that weighs against them in equity. *See Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947)

424    (party who attempts to circumvent legal protections through forum shopping not entitled to

425    equitable consideration); *see also Precision Instrument Mfg. Co.*, 324 U.S. at 814 (unclean

426    hands doctrine). Defendants remain free to pursue any lawful remedies in U.S. courts, where

427    KGE can adequately defend itself. The injunction merely prevents them from circumventing

428    U.S. law through foreign proceedings.

429        **E. An Injunction Is in the Public Interest**
430
431        The public interest strongly favors protecting First Amendment rights and preventing

432    foreign censorship of U.S. speakers. "It is always in the public interest to prevent the violation

433    of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

434    This principle applies with special force in First Amendment cases, where the public interest

435    includes not only the speaker's rights but also the public's right to receive information. *See*

436    *Board of Education v. Pico*, 457 U.S. 853, 867 (1982) (plurality opinion) ("the right to receive

437    ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech,

438    press, and political freedom"); *see also X Corp. v. Bonta*, 2024 WL 4061366, at *10 (public

439    interest in open online debate).

440        The public interest in preventing libel tourism and preserving U.S. sovereignty over

441    speech regulation within our borders cannot be overstated. Congress recognized this interest in

442    enacting the SPEECH Act, declaring it the policy of the United States to protect freedom of

443    expression from foreign judgments. Allowing Defendants' scheme to succeed would encourage

444    other foreign plaintiffs to engage in similar forum shopping, gradually eroding First

445    Amendment protections through jurisdictional arbitrage. *See Ehrenfeld v. Bin Mahfouz*, 9

446    N.Y.3d at 507 (public policy against libel tourism).

447        The public also has a specific interest in accessing information about corporate

448     development projects and their community impacts—precisely the information KGE provides.

449     *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) (public interest in

450     receiving information about corporate activity affecting community). Environmental concerns,

451     development controversies, and corporate accountability are quintessential matters of public

452     concern deserving robust protection. *See Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)

453     ("Freedom of discussion... must embrace all issues about which information is needed... to

454     enable the members of society to cope with the exigencies of their period"); *see also Citizens*

455     *United v. FEC*, 558 U.S. at 370 (public interest in corporate political speech).

456        Furthermore, the public interest in maintaining the Internet as an open forum for speech

457     weighs heavily in favor of an injunction. The Supreme Court has recognized that the Internet

458     provides "relatively unlimited, low-cost capacity for communication of all kinds," making it "a

459     unique and wholly new medium of worldwide human communication." *Reno v. American Civil*

460     *Liberties Union*, 521 U.S. 844, 850, 851 (1997). Allowing foreign courts to dictate what

461     Americans can publish and read online would balkanize the Internet and destroy its character

462     as a global forum for free expression. *See American Civil Liberties Union v. Reno*, 217 F.3d

463     162, 181 (3d Cir. 2000) (public interest in "facilitating and promoting the free exchange of

464     ideas on an infinite number of topics"); *see also Packingham*, 582 U.S. at 107 (public interest

465     in access to online forums).

466        Courts have specifically recognized the public interest in preventing the enforcement

467     of foreign speech-restrictive orders. In *Google Inc. v. Equustek*, this Court found that the public

468     interest favored enjoining a Canadian global delisting order because enforcement "would

469     eliminate Section 230 immunity for service providers" and allow foreign nations to impose

470     their speech restrictions globally. 2017 WL 5000834, at *4. The same public interests apply

471     here with even greater force, as this case involves core political speech about matters of public

472    concern. *See also Yahoo! Inc.*, 433 F.3d at 1217 (public interest against enforcing foreign

473    content restrictions).

474         The precedential effect of this case also implicates the public interest. If Defendants

475    succeed in using an Australian court to silence a U.S. publisher, it will embolden other foreign

476    plaintiffs to pursue similar strategies. This would create a race to the bottom, where global

477    Internet speech is governed by the most restrictive regimes rather than the most protective. *See*

478    *Matal v. Tam*, 582 U.S. 218, 245-47 (2017) (preventing "a huge chilling effect on speech"

479    serves public interest); *see also Moody v. NetChoice*, 603 U.S. 707, 733-34 (2024) (public

480    interest in uniform online speech protections). The public interest demands that U.S. courts

481    stand as a bulwark against such efforts.

482         Finally, there is no countervailing public interest in enforcing a foreign order that

483    violates U.S. law. While preventing actual defamation might serve a public interest, Defendants

484    have made no showing under U.S. standards that KGE's speech is false or defamatory. Under

485    our constitutional system, the remedy for speech is more speech, not enforced silence. *See*

486    *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). The public interest

487    lies in preserving this marketplace of ideas, not in allowing foreign courts to shut down one

488    side of a public debate. *See Abrams v. United States*, 250 U.S. at 630 (Holmes, J., dissenting)

489    (truth emerges through competition of ideas).

490         **E. The Court Should Issue the Requested Injunction Without Bond**

491         Federal Rule of Civil Procedure 65(c) provides that a court may require the movant to

492    give security (a bond) in support of a preliminary injunction or TRO. However, the Court has

493    discretion to waive or reduce the bond requirement when there is no risk of monetary loss to

494    the enjoined party. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c)

495    invests the district court 'with discretion as to the amount of security required, if any.'"); *see*

496    *also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

497    2003) (waiving bond where no harm to defendant).

498        Courts routinely waive bond requirements in First Amendment cases, recognizing that

499    requiring security for the vindication of constitutional rights would itself chill protected speech.

500    *See Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009)

501    ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the

502    infringement of a fundamental constitutional right."); *see also Doctor's Assocs., Inc. v. Stuart*,

503    85 F.3d 975, 985 (2d Cir. 1996) (waiving where bond would deny access to judicial review).

504    The Ninth Circuit has affirmed waiver of bond where "the balance of equities tips sharply in

505    favor of the party seeking the injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir.

506    2009); *see also Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999) (waiving in

507    public interest case).

508        Here, no bond should be required for multiple reasons:

509    First, Defendants will suffer no financial loss from being enjoined from violating U.S. law. The

510    injunction simply prevents enforcement of a foreign order that is already unenforceable under

511    the SPEECH Act. *See Connecticut General Life Insurance Co. v. New Images of Beverly Hills*,

512    321 F.3d 878, 882 (9th Cir. 2003) (no bond required where defendant "would not be harmed"

513    by injunction).

514        Second, requiring a bond would chill the exercise of First Amendment rights by

515    imposing a financial barrier to vindicating constitutional freedoms. This is particularly

516    problematic where, as here, the plaintiff is a non-profit community organization with limited

517    resources challenging well-funded corporate defendants. *See Doctor's Associates, Inc. v.*

518    *Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (bond requirement should not "deny citizens access to

519    judicial review of administrative actions").

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

520        Third, the public interest in protecting First Amendment rights outweighs any

521   speculative harm to Defendants. Courts have waived bonds where "the public interest...

522   favor[s] the issuance of an injunction." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th

523   Cir. 1999).

524        Fourth, Defendants' unclean hands in alleged forum shopping and suing the wrong party

525   weigh against requiring Plaintiff to post security. *See Precision Instrument Mfg. Co.*, 324 U.S.

526   at 814 (unclean hands).

527        For these reasons, the Court should exercise its discretion to waive any bond

528   requirement, as courts routinely do in First Amendment cases where constitutional rights are

529   at stake and no monetary harm to defendants is likely.

530        **V. CONCLUSION**

531        For the foregoing reasons, Plaintiff Kurraba Group Exposed respectfully requests that

532   the Court grant the motion and issue a temporary restraining order and preliminary injunction

533   (and, upon final judgment, a permanent injunction) providing the following relief:

534        1. Enjoining Enforcement of the Australian Order in the U.S.: Defendants Kurraba

535   Group Pty Ltd and Nicholas Smith, and anyone in active concert with them, shall be

536   restrained and enjoined from enforcing, attempting to enforce, or otherwise giving any effect

537   to the orders of the New South Wales, Australia court (including the *ex parte* interim

538   injunction issued on or about October 7, 2025, and any subsequent orders in that case) in any

539   court or jurisdiction of the United States. This includes prohibiting Defendants from seeking

540   recognition of the Australian orders in the U.S. or presenting them to any U.S.-based person

541   or entity as a basis to remove, de-index, or suppress Plaintiff's content. This relief is

542   necessary to prevent circumvention of the SPEECH Act and First Amendment protections.

543   *See* 28 U.S.C. § 4102; *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir.

544   2006).

545         2. Enjoining Further Censorship Actions Abroad that Impact U.S. Speech: Defendants

546    are further enjoined from taking any action in Australia or elsewhere to invoke or enforce the

547    Australian court's orders in a manner that would interfere with Plaintiff's publication of

548    content in the United States. In particular, Defendants shall not pursue contempt proceedings,

549    penalties, or new injunctions in the Australian courts against Google (or other U.S. entities)

550    for failure to comply with the Australian removal order, insofar as such non-compliance

551    occurs in accordance with U.S. law and this Court's orders. This anti-suit injunction is

552    appropriate where foreign proceedings threaten to undermine U.S. public policy and

553    constitutional rights. *See Paramedics Electromedicina Comercial, Ltda v. GE Medical*

554    *Systems Information Technologies, Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). Defendants must

555    not attempt an "end-run" around this injunction by re-litigating the same issues abroad to

556    induce censorship of Plaintiff's U.S.-hosted content.

557         3. Declaratory Relief: It is further declared that Plaintiff's publications at issue do not

558    violate U.S. defamation law and are protected speech under the First Amendment, and that

559    the Australian injunction and any resulting judgment are repugnant to the public policy of the

560    United States and unenforceable domestically pursuant to the SPEECH Act, 28 U.S.C. §

561    4102, Communications Decency Act, 47 U.S.C. § 230, and the First Amendment to the

562    United States Constitution. Such declaratory relief is appropriate to resolve the legal

563    uncertainty created by Defendants' forum shopping and to prevent future attempts to enforce

564    the foreign order. *See* 28 U.S.C. § 2201.

565         Such injunctive relief is narrowly tailored to prevent irreparable injury, uphold federal

566    law, and restore the parties to the appropriate status quo pending final resolution. It does not

567    interfere with the Australian court's proceedings beyond U.S. borders, but it ensures that

568    foreign censorship cannot be projected into the United States in contravention of Americans'

569    constitutional rights and U.S. public policy. The relief is consistent with principles of

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

570    international comity while maintaining the supremacy of U.S. constitutional protections

571    within our borders.

572        All the requirements for a TRO and preliminary injunction are met, and indeed, the

573    public interest would be ill-served by any further delay in granting relief.  Each day of delay

574    perpetuates ongoing constitutional violations and emboldens further attempts to circumvent

575    U.S. free speech protections through foreign litigation. Plaintiff therefore requests that the

576    Court issue a TRO immediately, followed by a preliminary injunction after a noticed hearing,

577    and ultimately a permanent injunction in the same form upon entry of final judgment.

578        The Court stands at a crossroads between two visions of online speech: one in which

579    the most restrictive regimes worldwide can silence American speakers through jurisdictional

580    gamesmanship, and another in which U.S. constitutional values protect the marketplace of

581    ideas from foreign censorship. Plaintiff respectfully urges the Court to choose the path of

582    freedom, to vindicate the principles embodied in the First Amendment and the SPEECH Act,

583    and to ensure that libel tourism finds no safe harbor in American courts.


Dated: October 28, 2025                    Respectfully submitted,

Derek S. Khanna (Cal. Bar No.
308563)
706 Tesoro Road
Monterey, CA 93940                         /s/*Derek S. Khanna*
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com              _____
                                            Derek S. Khanna
Mark I. Bailen (D.C. Bar No. 459623),
*Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No.
4799953), *Pro Hac Vice Forthcoming*
Bailen Law

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF**

100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff*
*Kurraba Group Exposed*