Derek S. Khanna (Cal. Bar No. 308563)
706 Tesoro Road
Monterey, CA 93940
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com

Mark I. Bailen (D.C. Bar No. 459623), *Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No. 4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff, Kurraba Group Exposed*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **Kurraba Group Exposed**, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>**Kurraba Group Pty Ltd,** a New South Wales, Australia, private limited company, and<br><br>**Nicholas "Nick" Mark Smith**, an individual residing in New South Wales, Australia,<br><br>Defendants. | Case No. Case 3:25-cv-09271<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INJUNCTIVE RELIEF

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................5

III. LEGAL STANDARD FOR INJUNCTIVE RELIEF .........................................7

IV. LEGAL ARGUMENT.........................................................................................8

  A.  Plaintiff's Investigative Reporting and Watchdog Journalism Represents Core First

     Amendment Activity..........................................................................................8

  B.  Plaintiff Is Likely to Succeed on the Merits....................................................9

    1. The Australian Order Violates the SPEECH Act and Cannot Be Recognized.............9

    2. The Australian Order Violates Core First Amendment Principles .............................12

    3. The Australian Proceedings Violated Due Process ....................................................14

    4.  Plaintiff Will Suffer Irreparable Harm Absent an Injunction  ....................................14

  D. The Balance of Equities Tips Sharply in Plaintiff's Favor................................................17

  E. An Injunction Is in the Public Interest..............................................................................18

  F. The Court Should Issue the Requested Injunction Without Bond....................................20

V. CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

*Abdullah v. Sheridan Square Press, Inc.*, 1994 WL 419847 (S.D.N.Y. May 3, 1994) ...........10

*Abrams v. United States*, 250 U.S. 616, 630 (1919) ................................................................20

*Alexander v. United States*, 509 U.S. 544 (1993) ..............................................................6, 11

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ...............................7

*American Civil Liberties Union v. Reno*, 217 F.3d 162 (3d Cir. 2000) ...................................19

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ..........................................................................14, 17

*Associated Press v. United States*, 326 U.S. 1  (1945) ...........................................................16

*Bachchan v. India Abroad Publications, Inc.*, 154 Misc. 2d 228
   (N.Y. Sup. Ct. 1992) ....................................................................................................6, 13

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ................................................................2,

*Barahona-Gomez v. Reno,* 167 F.3d 1228 (9th Cir. 1999) ......................................................21

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...............................................................................8

*Board of Education v. Pico*, 457 U.S. 853 (1982)  ...........................................................7, 18

*Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984) ............................................................6

*Burnham v. Superior Court*, 495 U.S. 604 (1990) ...................................................................5

*CBS Inc. v. Davis*, 510 U.S. 1315 (1994)  ...........................................................................13

*Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009) ..........21

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   321 F.3d 878 (9th Cir. 2003) .........................................................................................21

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967) ..............................................................10

*Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ..............................................21

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) .........................................................................16

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) .......................9, 11

*e360Insight, LLC v. The Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007) ............................17

*Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501 (N.Y. 2007) ...........................................................18

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................4, 8, 16

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978) ......................................9, 19

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992).............................14

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .....................................12, 17

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ...................................................6,

*Google Inc. v. Equustek,* 2017 WL 5000834 (N.D. Cal. Nov. 2, 2017). ...............19

*Hilton v. Guyot*, 159 U.S. 113 (1895) .....................................................................15

*Hubbard v. City of San Diego*, No. 24-4613, 2025 WL 1572736 (9th Cir. June 4, 2025) ........8

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)......................................3, 17

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)...........................................21

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003)...........................................20

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ...................................7

*Kleindienst v. Mandel*, 408 U.S. 753 (1972).............................................................7

*Matal v. Tam*, 582 U.S. 218 (2017) ..................................................................13, 20

*Matusevitch v. Telnikoff*, 877 F. Supp. 1 (D.D.C. 1995) ....................................2, 11

*Meinecke v. City of Seattle*, No. 23-35481, 2024 WL 1714473 (9th Cir. Apr. 18, 2024) ...4, 17

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)................................................18

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ..............................................11,

*Mills v. Alabama*, 384 U.S. 214 (1966) ....................................................................8

*Moody v. NetChoice, LLC,* 603 U.S. 707 (2024)..............................................16, 20

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................2, 14

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013)................................4, 9

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976)...................................2, 12, 16

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)......................................3, 10

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ..................................12

*Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014) ............................................11

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971)...............................................3

*Pacific Gas & Electric Co. v. Public Utilities Commission*, 475 U.S. 1 (1986) ......................8

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ....................................................3, 13, 19

*Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Info. Tech., Inc.*,
   369 F.3d 645 (2d Cir. 2004)...............................................................................................23

*Pennoyer v. Neff*, 95 U.S. 714 (1877) ......................................................................................14

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ..........................................6, 10

*Precision Instr. Mfg Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806 (1945) .......14, 18, 22

*Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969) .........................................................1

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ........................................................................13

*Reno v. American Civil Liberties Union*, 521 U.S. 844, 850 (1997) ...........................11, 14, 19

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ............................................................17

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020).................................8, 16

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) ......................7, 16

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2013) ..................................7

*Sims v. Greene*, 161 F.2d 87 (3d Cir. 1947) ............................................................................18

*Snyder v. Phelps*, 562 U.S. 443 (2011)..................................................................1, 11, 13, 17

*Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000)..................................................14,

*Stanley v. Georgia*, 394 U.S. 557 (1969)...................................................................................1

*Thornhill v. Alabama*, 310 U.S. 88 (1940) ..............................................................................19

*Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013)..............................2, 9, 11

*United States v. Alvarez*, 567 U.S. 709 (2012) ........................................................................13

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)........................................16

*Whitney v. California*, 274 U.S. 357 (1927) ............................................................................20

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)................................3, 7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................2

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) .........................................................4, 16, 18

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) ......................3, 22

**Statutes**

28 U.S.C. § 2201 .........................................................................................................................23

28 U.S.C. § 2467(d)(1)(A) ...........................................................................................................15

28 U.S.C. § 4102 ....................................................................................................7, 9, 12, 22, 23

Communications Decency Act, 47 U.S.C. § 230 ...........................................................9, 19, 23

*Defamation Act 2005* (NSW) § 25 .............................................................................................10

SPEECH Act ....................................................................................................................passim

**Rules**

Federal Rule of Civil Procedure 65(c) ........................................................................................20

**Other Authorities**

156 Cong. Rec. S6934 (daily ed. Aug. 3, 2010) ........................................................................10

H.R. Rep. No. 111-154 (2009)....................................................................................................10

1    **I. INTRODUCTION**

2        Plaintiff Kurraba Group Exposed ("KGE") submits this memorandum of law in support

3    of its motion for a temporary restraining order, preliminary injunction, and permanent

4    injunction. KGE is a San Francisco-based online publisher that has engaged in core political

5    speech and investigative reporting about Defendants' real estate development activities. This

6    speech embodies the very essence of protected expression under the First Amendment,

7    including criticism of corporate conduct and matters of significant public interest. *See Snyder*

8    *v. Phelps*, 562 U.S. 443, 451-52 (2011) (speech on issues of public concern occupies the

9    "highest rung of the hierarchy of First Amendment values"). In response, Defendants Kurraba

10   Group Pty Ltd and its CEO Nicholas "Nick" Smith secured an *ex parte* interim injunction from

11   an Australian court, obtained under plaintiff-friendly Australian defamation/privacy law that

12   lacks the robust protections afforded by U.S. constitutional jurisprudence, that gagged KGE's

13   website and ordered removal of its content from the internet. Defendants then invoked that

14   foreign order to induce Google LLC ("Google") to geo-block KGE's website in Australia and

15   to remove or de-index KGE's content in search results globally, effectively suppressing

16   Plaintiff's reporting from public view and depriving American citizens of their right to receive

17   information. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that

18   the Constitution protects the right to receive information and ideas."); *see also Red Lion*

19   *Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969) (the right of the public to receive suitable

20   access to social, political, aesthetic, moral, and other ideas and experiences is crucial to the

21   First Amendment).

22       This case is a paradigmatic example of libel tourism, where a litigant circumvents U.S.

23   free speech safeguards by suing in a foreign forum with weaker protections. The practice has

24   been explicitly condemned by Congress through the SPEECH Act, which was enacted

1    specifically to combat such forum shopping. *See Trout Point Lodge, Ltd. v. Handshoe*, 729

2    F.3d 481, 487 (5th Cir. 2013) (noting that Congress enacted the SPEECH Act to protect

3    American authors and publishers from foreign defamation judgments that do not comport with

4    the First Amendment); *see also Matusevitch v. Telnikoff*, 877 F. Supp. 1, 4 (D.D.C. 1995)

5    (refusing to enforce a British libel judgment on First Amendment grounds, noting the

6    incompatibility with U.S. protections). Plaintiff, which is operated by U.S. activists and hosted

7    on U.S. servers, was not even a party to the foreign proceeding (Defendants sued the wrong

8    individual in Australia), rendering the entire proceeding a nullity as to KGE under basic due

9    process principles. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

10   (1950) (fundamental requirement of due process is notice and opportunity to be heard); *see*

11   *also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (due process

12   requires that a defendant be "haled into court" only where it has minimum contacts, ensuring

13   fairness and foreseeability). Through this gambit, Defendants have sought to silence speech

14   that they could not restrain under U.S. law, exploiting procedural loopholes and jurisdictional

15   gamesmanship to achieve what the First Amendment forbids.

16          The foreign court's interim injunction, which functions as a prior restraint on speech, is

17   repugnant to fundamental First Amendment principles and would never be countenanced by

18   an American court. Indeed, U.S. courts have long recognized a "heavy presumption" that any

19   prior restraint on speech is unconstitutional. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

20   (1976). The Supreme Court has repeatedly emphasized that "[a]ny system of prior restraints of

21   expression comes to this Court bearing a heavy presumption against its constitutional validity."

22   *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints are "the most serious

23   and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n*, 427

24   U.S. at 559. The Australian order here, issued without notice to KGE, without proof of falsity,

25   without consideration of actual malice, and without the procedural safeguards required by U.S.

1   law, exemplifies precisely the type of censorship our Constitution forbids. *See Organization*

2   *for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971) (designating a publisher's conduct as

3   invasion of privacy "is not sufficient to support an injunction against peaceful distribution of

4   informational literature"); *see also Packingham v. North Carolina*, 582 U.S. 98, 107 (2017)

5   (striking down restrictions on online speech, noting that social media and the Internet are "the

6   most important places... for the exchange of views").

7       KGE now seeks narrowly tailored relief to prevent irreparable injury to its First

8   Amendment rights and to U.S. public policy. Specifically, Plaintiff requests that this Court: (1)

9   Defendants' Australian orders are repugnant to U.S. free speech principles and unenforceable

10  in the United States pursuant to the SPEECH Act and longstanding principles of international

11  comity; and (2) enjoin Defendants from enforcing or attempting to enforce the Australian

12  court's orders in the U.S. (or from taking any further steps to censor KGE's website based on

13  those orders), consistent with the principle that foreign judgments cannot be used to circumvent

14  constitutional protections, *see Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th

15  Cir. 2006) (en banc).

16      Such relief is essential to prevent the extraterritorial imposition of foreign censorship

17  in conflict with U.S. law, to prevent the balkanization of the internet along the lines of the most

18  restrictive speech regimes, and to uphold the heightened protections for speech on public

19  matters required by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and its progeny. *See*

20  *also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988) (extending *Sullivan*

21  protections to intentional infliction of emotional distress claims involving public figures,

22  underscoring the need for "breathing space" in public debate).

23      As demonstrated below, KGE easily satisfies the requirements for a TRO and

24  preliminary injunction, as outlined in *Winter v. Natural Resources Defense Council, Inc.*, 555

25  U.S. 7 (2008). Plaintiff is likely to succeed on the merits of its claims under the SPEECH Act

1    and First Amendment, because the foreign defamation order at issue cannot be enforced or

2    recognized here without contravening U.S. law and fundamental constitutional principles. The

3    SPEECH Act creates an absolute bar to recognition of foreign defamation judgments that do

4    not meet First Amendment standards, and this Australian order falls far short of those

5    standards. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1000 (9th Cir. 2013) ("Enforcing

6    a defamation or libel judgment absent a finding of malice stands in direct tension with

7    constitutional principles, because it punishes speech on the basis of content."). Absent

8    injunctive relief, Plaintiff will suffer immediate and irreparable harm to its First Amendment

9    rights and to its ability to disseminate its reporting, harm that is presumed irreparable as a

10   matter of law and is already ongoing. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss

11   of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

12   irreparable injury."); *see also Meinecke v. City of Seattle*, No. 23-35481, 2024 WL 1714473,

13   at *3 (9th Cir. Apr. 18, 2024) (affirming irreparable harm in First Amendment case involving

14   chalking on sidewalks as protected expression). The balance of hardships sharply favors

15   Plaintiff, as Defendants will suffer no cognizable injury from being restrained from pursuing

16   an unlawful censorship order obtained through forum shopping, whereas Plaintiff faces the loss

17   of constitutional rights and the very purpose of its website. Finally, an injunction would

18   strongly serve the public interest by reinforcing core free-speech values, safeguarding the

19   public's right to receive information on matters of public concern, preventing the chilling effect

20   on other U.S. speakers who might be targeted by similar foreign censorship efforts, and

21   upholding Congress's policy (embodied in the SPEECH Act) against domestic enforcement of

22   foreign libel judgments that undercut First Amendment standards. *See X Corp. v. Bonta*, 116

23   F.4th 888, 903-04 (9th Cir. 2024) (granting preliminary injunction against California content

24   moderation law on First Amendment grounds, noting the public interest in preventing

25   government overreach on online speech).

1    For these reasons, and as detailed further below, Plaintiff respectfully urges the Court

2    to grant the requested injunctive relief and to issue an order barring any enforcement of the

3    Australian injunction in the U.S., prohibiting any further censorship efforts by Defendants

4    based on that foreign order, and to thereby help ensure that Plaintiff's content is fully restored

5    on Google's search platform with equal visibility.

6    **II. FACTUAL BACKGROUND**

7    **Plaintiff's Investigative Reporting**: Plaintiff Kurraba Group Exposed (KGE) is an

8    unincorporated association of community activists based in California that operates an

9    independent news and commentary website hosted on servers physically located in the United

10   States. KGE's mission is to publish investigative reports and commentary regarding Defendant

11   Kurraba Group's real estate development projects, notably a controversial "life sciences"

12   development at 100 Botany Road in Sydney, and to expose alleged corruption, misconduct,

13   environmental concerns, and irregularities affecting the public interest.

14   **Defendants' Australian Lawsuit and Gag Order**: Rather than confront KGE's

15   criticisms in the marketplace of ideas, the traditional American approach to contested speech,

16   Defendants Kurraba Group and Nick Smith turned to a foreign court as a means to quash the

17   speech. In October 2025, they filed a defamation and privacy lawsuit in New South Wales,

18   Australia, against an Australian community advocate, Michael Williams. But Williams is not

19   actually responsible for the KGE site. They targeted the wrong party. This fundamental error

20   in party identification renders any resulting judgment void as to KGE. *See Burnham v. Superior*

21   *Court*, 495 U.S. 604, 610 (1990) (due process requires jurisdiction over the actual defendant,

22   not a proxy). Despite being informed that KGE's operators are U.S.-based and that Mr.

23   Williams lacks authority over the website, Defendants forged ahead in Australia, a jurisdiction

24   known for plaintiff-friendly defamation laws that lack meaningful First Amendment analogues,

25   thereby exploiting jurisdictional differences to evade U.S. constitutional safeguards. This

1    deliberate forum shopping violates principles of international comity and represents precisely

2    the abuse Congress sought to prevent through the SPEECH Act. *See* S. Rep. No. 111-224, at 3

3    (2010) (SPEECH Act intended to prevent foreign plaintiffs from "undermining American free

4    speech rights by suing American authors in foreign jurisdictions"); *see also Bachchan v. India*

5    *Abroad Publ'ns Inc.*, 154 Misc. 2d 228, 235 (N.Y. Sup. Ct. 1992) (refusing to enforce English

6    libel judgment, as it would jeopardize First Amendment protections).

7        In that *ex parte* proceeding, conducted without notice to or participation by KGE, an

8    Australian court, applying Australian law that provides no meaningful protection for speech on

9    matters of public concern, issued an interim injunction that gagged Plaintiff's website and

10   ordered KGE's online content removed. This broad prior restraint forbids KGE's speech about

11   Defendants wholesale, despite the fact that such speech would be protected under U.S. law,

12   especially given its public-issue context and the heightened protections for criticism of public

13   figures and matters of public concern. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342

14   (1974) (public figures must prove actual malice); *Philadelphia Newspapers, Inc. v. Hepps*, 475

15   U.S. 767, 776 (1986) (plaintiff bears burden of proving falsity on matters of public concern).

16   The Australian interim order was issued without notice to or participation by KGE (which was

17   not a defendant there), without any finding of falsity under the burden of proof required by

18   U.S. law, and without the substantive safeguards that American law requires, such as proof of

19   falsity or actual malice for speech about public figures or matters of public concern. *See Bose*

20   *Corp. v. Consumers Union*, 466 U.S. 485, 510 (1984) (requiring independent appellate review

21   of actual malice findings); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) (prior

22   restraints are presumptively invalid, especially when imposed without adversarial process).

23       **Defendants' Weaponization of Google to Enforce Foreign Censorship**: After

24   obtaining their *ex parte* foreign gag order, Defendants leveraged it to induce Google to

25   implement a global censorship regime against KGE's content. Google, faced with potential

1    contempt proceedings in Australia and lacking clear guidance on the extraterritorial reach of

2    foreign orders, geo-blocked KGE's website in Australia and dramatically reduced its visibility

3    in search results worldwide. This de facto enforcement of a foreign censorship order on U.S.

4    soil violates both the letter and spirit of the SPEECH Act, which prohibits giving effect to

5    foreign defamation judgments that do not meet First Amendment standards. *See* 28 U.S.C. §

6    4102(a)(1)(A). The practical effect has been to impose Australian speech restrictions on

7    American speakers and, critically, on the American public's right to access information. *See*

8    *Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) (First Amendment protects the right to

9    "receive information and ideas"); *see also Board of Educ. v. Pico*, 457 U.S. 853, 867 (1982)

10   (plurality opinion) (the right to receive ideas is essential to informed citizenship).

11   **III. LEGAL STANDARD FOR INJUNCTIVE RELIEF**

12          A plaintiff seeking a temporary restraining order or preliminary injunction must

13   establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent an

14   injunction; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction is in

15   the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

16   The Ninth Circuit also recognizes a sliding-scale approach where "serious questions going to

17   the merits" combined with a balance of hardships that "tips sharply" in plaintiff's favor can

18   support preliminary relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

19   Cir. 2011); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

20   2013) (applying sliding-scale in environmental speech case). In First Amendment cases, the

21   latter three factors often merge because constitutional violations presumptively constitute

22   irreparable harm and injunctions protecting constitutional rights are presumptively in the public

23   interest. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009); *see also*

24   *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959 (reversing district court's denial of

25   plaintiff's request for a preliminary injunction where "it is always in the public interest to

1    prevent the violation of a party's constitutional rights") (internal citation omitted); *Hubbard v.*

2    *City of San Diego*, No. 24-4613, 2025 WL 1572736, at *5 (9th Cir. June 4, 2025) (affirming

3    injunction in yoga instruction case as protected speech, merging factors due to First

4    Amendment stakes).

5         Importantly, when First Amendment rights are at stake, courts apply these factors with

6    particular solicitude for the constitutional interests involved. *See Pacific Gas & Electric Co. v.*

7    *Public Utilities Commission*, 475 U.S. 1, 8 (1986) (plurality opinion) ("For corporations as for

8    individuals, the choice to speak includes within it the choice of what not to say."). The Supreme

9    Court has consistently held that "the loss of First Amendment freedoms, for even minimal

10   periods of time, unquestionably constitutes irreparable injury," mandating injunctive relief

11   where speech rights are threatened. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Roman*

12   *Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("The loss of

13   First Amendment freedoms... unquestionably constitutes irreparable injury.").

14   **IV. LEGAL ARGUMENT**

15        *A.  Plaintiff's Investigative Reporting and Watchdog Journalism Represents Core*

16              *First Amendment Activity*

17        KGE's content, published on U.S. servers by U.S. contributors exercising their

18   constitutional rights from U.S. soil, squarely addresses matters of public concern, including

19   potential regulatory violations, environmental impacts, community displacement, and the

20   intersection of corporate power with local governance. Such speech receives the highest level

21   of constitutional protection.  *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("Whatever

22   differences may exist about interpretations of the First Amendment, there is practically

23   universal agreement that a major purpose of that Amendment was to protect the free

24   discussion of governmental affairs."); *see also Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001)

25   (protecting media dissemination of information on matters of public concern, even if obtained

1   unlawfully by third parties); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S.

2   749, 758-59 (1985) (plurality opinion) (speech on matters of public concern receives special

3   protection); *see also First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) (corporate

4   speech on public issues is fully protected, as the First Amendment does not distinguish

5   between speakers).

6       *B.  Plaintiff Is Likely to Succeed on the Merits*

7       Plaintiff's likelihood of success is overwhelming because the Australian defamation

8   order cannot be recognized or enforced under U.S. law on multiple independent grounds: (A)

9   it violates the SPEECH Act's explicit prohibitions; (B) it contravenes fundamental First

10   Amendment principles; (C) it fails basic due process requirements; and (D) it conflicts with

11   Section 230 of the Communications Decency Act. Any one of these grounds would suffice;

12   together, they compel the conclusion that Defendants' censorship efforts must be enjoined. *See*

13   *Naoko Ohno v. Yuko Yasuma*, 723 F.3d at 1003 (9th Cir. 2013) (barring enforcement under

14   SPEECH Act, noting multiple overlapping protections).

15      **1. The Australian Order Violates the SPEECH Act and Cannot Be Recognized**

16      The Securing the Protection of our Enduring and Established Constitutional Heritage

17   Act (SPEECH Act), 28 U.S.C. §§ 4101-4105, categorically prohibits U.S. courts from

18   recognizing or enforcing foreign defamation judgments that fail to meet First Amendment

19   standards. The statute provides that "a domestic court shall not recognize or enforce a foreign

20   judgment for defamation" unless the foreign court's jurisdiction was proper and "the

21   defamation law applied in the foreign court's adjudication provided at least as much protection

22   for freedom of speech and press... as would be provided by the [F]irst [A]mendment." 28

23   U.S.C. § 4102(a)(1). This effectively bars enforcement, rather than a balancing test, against the

24   recognition of speech-restrictive foreign judgments. *See Trout Point Lodge, Ltd. v. Handshoe*,

1    729 F.3d 481, 487-89 (5th Cir. 2013) (affirming denial of recognition to Canadian defamation

2    judgment under SPEECH Act).

3          The legislative history confirms Congress's intent to create a robust shield against libel

4    tourism. The House Report states that the Act was designed to "protect American authors,

5    journalists, and publishers from foreign defamation judgments that undermine the First

6    Amendment." H.R. Rep. No. 111-154, at 2 (2009). Senator Patrick Leahy, a principal sponsor,

7    explained that the Act would "help ensure that libel tourists do not attempt to chill speech in

8    the United States." 156 Cong. Rec. S6934 (daily ed. Aug. 3, 2010). The Act applies not only

9    to final judgments but also to any attempt to give effect to foreign speech-restrictive orders in

10   the United States.

11         Australian defamation law falls far short of First Amendment standards in multiple

12   critical respects:

13         **Burden of Proof**: Australian law places the burden on defendants to prove truth as a

14   defense, whereas U.S. law requires plaintiffs to prove falsity when the speech involves matters

15   of public concern. Compare *Defamation Act 2005* (NSW) § 25 with *Philadelphia Newspapers,*

16   *Inc. v. Hepps*, 475 U.S. 767, 776 (1986). This burden-shifting alone renders Australian

17   judgments unenforceable.

18         **Actual Malice Standard**: Australian law does not require public figures or officials to

19   prove actual malice, knowledge of falsity or reckless disregard for truth. This fundamental

20   protection, established in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and extended

21   in *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), has no meaningful equivalent in

22   Australian jurisprudence. The absence of this protection alone mandates non-recognition. *See*

23   *Abdullah v. Sheridan Square Press, Inc.*, 1994 WL 419847, at *3 (S.D.N.Y. May 3, 1994) (pre-

24   SPEECH Act case refusing to enforce British libel judgment lacking actual malice

1   requirement); *see also Matusevitch v. Telnikoff*, 877 F. Supp. at 4 (D.D.C. 1995) (similar refusal

2   of English judgment).

3        **Prior Restraints**: Australian courts readily issue interim injunctions restraining speech

4   pending trial, as occurred here. U.S. law subjects prior restraints to extraordinary scrutiny and

5   presumes them unconstitutional. *See Alexander v. United States*, 509 U.S. 544, 550 (1993)

6   ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually

7   forbid speech activities—are classic examples of prior restraints."); *see also Reno v. ACLU*,

8   521 U.S. at 872 (striking internet prior restraints). The Australian court's willingness to gag

9   KGE's website through an *ex parte* order demonstrates a fundamentally different approach to

10  free expression, one that is incompatible with our constitutional order.

11       **Opinion Protection**: U.S. law absolutely protects statements of opinion that cannot be

12  proven false. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Australian law

13  provides more limited protection for "honest opinion," requiring a factual basis that courts

14  scrutinize. This disparity means that core political commentary protected in the U.S. faces

15  liability in Australia. *See also Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir.

16  2014) (extending opinion protection to online bloggers).

17       **Public Concern Doctrine**: The First Amendment provides heightened protection for

18  speech on matters of public concern, requiring private-figure plaintiffs to prove both falsity

19  and fault. *See Dun & Bradstreet*, 472 U.S. at 758-59. Australian law contains no comparable

20  doctrine, treating speech about corporate misconduct or development controversies the same

21  as purely private gossip. *See also Snyder v. Phelps*, 562 U.S. at 458 (protecting even offensive

22  speech on public matters).

23       Federal courts applying the SPEECH Act have consistently refused to enforce foreign

24  judgments from jurisdictions with similar disparities. In *Trout Point Lodge*, the Fifth Circuit

25  affirmed non-recognition of a Canadian judgment where Canadian law lacked the actual malice

1    standard and placed the burden of proving truth on defendants. 729 F.3d at 488-89. The court

2    emphasized that "the judgment fails under the SPEECH Act as a matter of law" where these

3    fundamental protections are absent. *Id.* at 495.

4         Here, the Australian interim injunction fails every aspect of the SPEECH Act test. It

5    was issued *ex parte* without requiring proof of falsity, without applying any actual malice

6    standard, and as a prior restraint that would be presumptively unconstitutional in the U.S. The

7    SPEECH Act compels non-recognition as a matter of law, and any attempt to enforce or give

8    effect to this order, whether directly through judicial proceedings or indirectly through private

9    censorship, violates federal statute and policy. *See* 28 U.S.C. § 4102(a)(1)(B) (prohibiting

10   enforcement where "the party opposing recognition... would not have been found liable" under

11   U.S. law).

12        **2. The Australian Order Violates Core First Amendment Principles**

13        Independent of the SPEECH Act, the Australian order cannot be enforced because it

14   violates fundamental First Amendment principles that no foreign judgment can override. The

15   Supreme Court has made clear that the First Amendment's protections extend to attempts to

16   suppress speech through foreign legal mechanisms. *See Garcia v. Google, Inc.*, 786 F.3d 733,

17   745 (9th Cir. 2015) (en banc) (dissolving injunction on online video, emphasizing First

18   Amendment limits on prior restraints in digital media).

19        **Prior Restraint Doctrine**: The Australian injunction is a quintessential prior restraint,

20   "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska*

21   *Press Ass'n*, 427 U.S. at 559. Prior restraints bear a "heavy presumption" of unconstitutionality

22   and are permissible only in the most exceptional circumstances, none present here. *See New*

23   *York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (Pentagon Papers case).

24   The Supreme Court has invalidated prior restraints even when national security was allegedly

25   at stake. *Id*. It defies logic and precedent to enforce a foreign prior restraint based merely on

1    alleged reputational harm to a corporate entity. *See CBS Inc. v. Davis*, 510 U.S. 1315, 1317

2    (1994) (Blackmun, J., in chambers) (even temporary prior restraint causes irreparable First

3    Amendment harm); *see also Reno v. ACLU*, 521 U.S. at 872 (applying prior restraint doctrine

4    to internet regulations).

5         Courts have specifically held that foreign injunctions restraining speech cannot be

6    enforced in the United States. In *Bachchan v. India Abroad Publications, Inc.*, 154 Misc. 2d

7    228, 235 (N.Y. Sup. Ct. 1992), the court refused to enforce an English injunction restraining

8    publication, holding that "the protection to free speech and the press embodied in [the First]

9    amendment would be seriously jeopardized by the entry of foreign [injunction] orders." The

10   principle applies with even greater force here, where the foreign order seeks to suppress

11   criticism of corporate conduct and matters of public concern.

12       **Content-Based Restriction**: The Australian order targets KGE's speech based on its

13   content, criticism of Defendants' business practices. Content-based restrictions on speech are

14   presumptively unconstitutional and subject to strict scrutiny. *See Reed v. Town of Gilbert*, 576

15   U.S. 155, 163 (2015). To survive strict scrutiny, the restriction must be narrowly tailored to

16   serve a compelling government interest. *Id*. Protecting corporate reputation from criticism does

17   not constitute a compelling interest sufficient to override First Amendment rights. *See Snyder*

18   *v. Phelps*, 562 U.S. 443, 458 (2011) (even "outrageous" speech on matters of public concern

19   protected); *see also United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality opinion) (lies

20   about military honors protected absent proof of concrete harm); *Matal v. Tam*, 582 U.S. 218,

21   245 (2017) (striking content-based trademark restrictions).

22       **Public Forum Doctrine**: The Internet is the modern public forum, "the most important

23   place[]... for the exchange of views." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017).

24   Defendants' attempt to banish KGE from this forum through foreign litigation strikes at the

25   heart of the public forum doctrine. The Supreme Court has held that complete bans on accessing

1    online platforms implicate fundamental First Amendment concerns. *Id*. at 1737. Using foreign

2    courts to achieve the same result cannot be permitted.

3        **Chilling Effect**: Enforcing the Australian order would chill protected speech far beyond

4    this case. If foreign plaintiffs can silence U.S. speakers by obtaining judgments abroad,

5    especially against defendants who are not correctly named, it would incentivize forum

6    shopping and create a "heckler's veto" whereby those with resources could silence critics by

7    finding the most plaintiff-friendly jurisdiction worldwide. *See Forsyth County v. Nationalist*

8    *Movement*, 505 U.S. 123, 134-35 (1992) (condemning heckler's veto doctrine). The First

9    Amendment does not permit such an end-run around constitutional protections. *See Reno v.*

10   *American Civil Liberties Union*, 521 U.S. 844, 877 (1997) (Internet speech cannot be regulated

11   based on most restrictive community standards); *see also Ashcroft v. ACLU*, 542 U.S. 656, 660

12   (2004) (striking content based restriction as overbroad chilling effect on online speech).

13       **3. The Australian Proceedings Violated Due Process**

14       The Australian order also cannot be enforced because it was obtained in violation of

15   basic due process principles. KGE was not a party to the Australian proceedings, received no

16   notice, and had no opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*,

17   339 U.S. 306, 313 (1950) ("An elementary and fundamental requirement of due process... is

18   notice reasonably calculated... to apprise interested parties of the pendency of the action."). A

19   judgment entered without jurisdiction over the actual party in interest is void and entitled to no

20   faith and credit. *See Pennoyer v. Neff*, 95 U.S. 714, 732 (1877); *see also Society of Lloyd's v.*

21   *Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (noting that enforcement of foreign judgment may

22   be declined where foreign procedures were not "fundamentally fair" and offend against "basic

23   fairness."). Moreover, Defendants' deliberate choice to sue the wrong party, which continued

24   even after they were informed of their error, constitutes litigation misconduct that should bar

25   any equitable relief. *See Precision Instrument Manufacturing Co. v. Automotive Maintenance*

1    *Machinery Co.*, 324 U.S. 806, 814-15 (1945) (party who comes to court with "unclean hands"

2    cannot obtain equitable relief). Courts have refused to enforce foreign judgments obtained

3    through procedural manipulation. *See Hilton v. Guyot*, 159 U.S. 113, 205 (1895) (comity does

4    not extend to judgments obtained by fraud or without due process). Under international

5    standards, enforcement requires that the foreign system provide impartial tribunals and

6    procedures compatible with due process. *See* 28 U.S.C. § 2467(d)(1)(A) (refusing enforcement

7    if foreign system incompatible with due process). Here, the *ex parte* nature and

8    misidentification of parties flout these requirements.

9            **4. Plaintiff Will Suffer Irreparable Harm Absent an Injunction**

10    Rather than address the substantive issues raised by community members, Kurraba Group and

11    Nick Smith responded with aggressive legal tactics aimed at silencing their critics. In

12    September 2025, Smith took an extraordinary measure: he filed an application for an

13    Apprehended Personal Violence Order (APVO), a protective order under Australian law

14    similar in function to a restraining order, against Michael Williams, claiming he feared for his

15    safety due to Williams' activism. This gambit, typically reserved for situations of stalking or

16    harassment, appeared to be a SLAPP-style abuse of process, repurposing a law enforcement

17    tool to intimidate a vocal opponent. There was no evidence of any actual violence or personal

18    threats by Williams; his conduct was limited to "public advocacy and legal protest, not threats

19    or violence," making the APVO request highly suspect. Observers noted that using an APVO

20    in a development dispute was virtually unprecedented and warned that courts frown on such

21    vexatious misuse of protective orders. As of the filing of this Complaint and motion for TRO

22    and preliminary relief, it is our understanding that the APVO matter has not resulted in any

23    finding against Williams; its primary significance here is that it illustrates Defendants'

24    willingness to employ any legal means to shut down criticism. This pattern of abusing legal

1    processes not only chills speech but also erodes trust in judicial systems, further emphasizing

2    the need for U.S. courts to intervene against such extraterritorial overreach.

3            The ongoing suppression of KGE's speech constitutes irreparable harm *per se*. The

4    Supreme Court has repeatedly held that "the loss of First Amendment freedoms, for even

5    minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427

6    U.S. 347, 373 (1976). This principle applies with particular force to prior restraints, which

7    inflict immediate and irreversible damage to free expression. *See Nebraska Press Ass'n*, 427

8    U.S. at 559; *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. at 18

9    (irreparable harm from even brief restrictions on religious speech).

10           Every day that KGE's website remains suppressed or de-indexed represents ongoing

11   constitutional injury that cannot be compensated through damages. *See Doe v. Harris*, 772 F.3d

12   563, 583 (9th Cir. 2014) ("ongoing violation of constitutional rights constitutes irreparable

13   injury"); *see also X Corp.*, 116 F.4th at 903, 904 (irreparable harm from compelled speech on

14   social media platforms). The harm extends beyond KGE to the public, which is deprived of

15   access to information about matters of public concern. *See Associated Press v. United States*,

16   326 U.S. 1, 20 (1945) (First Amendment "rests on the assumption that the widest possible

17   dissemination of information from diverse and antagonistic sources is essential to the welfare

18   of the public"); *see also Moody v. NetChoice, LLC,* 603 U.S. 707 (2024)*.* (public harm from

19   restricting online discourse).

20           Moreover, the reputational harm to KGE from being branded as a publisher of unlawful

21   content, when its speech is fully protected under U.S. law, constitutes additional irreparable

22   injury. *See Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002)

23   (reputational harm can constitute irreparable injury). The chilling effect on KGE's future

24   speech and on other publishers who might face similar foreign censorship efforts compounds

25   the injury. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (self-

1    censorship due to fear of prosecution constitutes injury); *see also Ashcroft v. ACLU*, 542 U.S.

2    at 660 (chilling effect on internet speech).

3        The technological harm from Google's de-indexing is also irreparable. Search engine

4    rankings and visibility develop over time through complex algorithms; once disrupted, they

5    cannot simply be restored to their prior state. *See e360Insight, LLC v. The Spamhaus Project*,

6    500 F.3d 594, 599 (7th Cir. 2007) (interference with Internet presence causes irreparable harm);

7    *see also Garcia v. Google*, 786 F.3d at 745 (irreparable harm from takedown of online content).

8    Each day of suppression means lost readers, diminished influence, and reduced ability to

9    contribute to public discourse, harms that money cannot adequately remedy.

10       **D. The Balance of Equities Tips Sharply in Plaintiff's Favor**

11        The balance of equities overwhelmingly favors granting injunctive relief. Plaintiff faces

12    the loss of fundamental constitutional rights and the effective destruction of its publishing

13    platform. In contrast, Defendants face no legitimate hardship from being enjoined from

14    enforcing an order that violates U.S. law. *See Meinecke v. City of Seattle,* 99 F.4th 514 (9th

15    Cir. 2024) (balance tips sharply where First Amendment rights outweigh minimal government

16    burden).

17        Defendants cannot claim hardship from being prevented from violating the Constitution

18    and federal statutes. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) ("[T]he

19    government cannot suffer harm from an injunction that merely ends an unlawful practice.").

20    Any reputational interest Defendants claim is far outweighed by Plaintiff's First Amendment

21    rights. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52–53 (1988) (noting that emotional

22    distress and reputational harm cannot justify suppression of speech where First Amendment

23    protections apply); *see also Snyder v. Phelps*, 562 U.S. at 460 (reputational harm insufficient

24    to override speech protections).

1    Moreover, Defendants' choice to forum shop in Australia rather than pursue remedies

2    in the U.S., where they would have to meet U.S. Constitutional standards, demonstrates bad

3    faith that weighs against them in equity. *See Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947)

4    (party who attempts to circumvent legal protections through forum shopping not entitled to

5    equitable consideration); *see also Precision Instrument Mfg. Co.*, 324 U.S. at 814 (unclean

6    hands doctrine). Defendants remain free to pursue any lawful remedies in U.S. courts, where

7    KGE can adequately defend itself. The injunction merely prevents them from circumventing

8    U.S. law through foreign proceedings.

9    **E. An Injunction Is in the Public Interest**
10

11    The public interest strongly favors protecting First Amendment rights and preventing

12    foreign censorship of U.S. speakers. "It is always in the public interest to prevent the violation

13    of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

14    This principle applies with special force in First Amendment cases, where the public interest

15    includes not only the speaker's rights but also the public's right to receive information. *See*

16    *Board of Education v. Pico*, 457 U.S. 853, 867 (1982) (plurality opinion) ("the right to receive

17    ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech,

18    press, and political freedom"); *see also X Corp.*, 116 F.4th at 903 (public interest in open online

19    debate).

20    The public interest in preventing libel tourism and preserving U.S. sovereignty over

21    speech regulation within our borders cannot be overstated. Congress recognized this interest in

22    enacting the SPEECH Act, declaring it the policy of the United States to protect freedom of

23    expression from foreign judgments. Allowing Defendants' scheme to succeed would encourage

24    other foreign plaintiffs to engage in similar forum shopping, gradually eroding First

25    Amendment protections through jurisdictional arbitrage. *See Ehrenfeld v. Bin Mahfouz*, 9

26    N.Y.3d at 507 (public policy against libel tourism).

1      The public also has a specific interest in accessing information about corporate

2  development projects and their community impacts—precisely the information KGE provides.

3  *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) (public interest in

4  receiving information about corporate activity affecting community). Environmental concerns,

5  development controversies, and corporate accountability are quintessential matters of public

6  concern deserving robust protection. *See Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)

7  ("Freedom of discussion... must embrace all issues about which information is needed... to

8  enable the members of society to cope with the exigencies of their period").

9      Furthermore, the public interest in maintaining the Internet as an open forum for speech

10  weighs heavily in favor of an injunction. The Supreme Court has recognized that the Internet

11  provides "relatively unlimited, low-cost capacity for communication of all kinds," making it "a

12  unique and wholly new medium of worldwide human communication." *Reno v. American Civil*

13  *Liberties Union*, 521 U.S. 844, 850, 851 (1997). Allowing foreign courts to dictate what

14  Americans can publish and read online would balkanize the Internet and destroy its character

15  as a global forum for free expression. *See American Civil Liberties Union v. Reno*, 217 F.3d

16  162, 181 (3d Cir. 2000) (public interest in "facilitating and promoting the free exchange of

17  ideas on an infinite number of topics"); *see also Packingham*, 582 U.S. at 107 (public interest

18  in access to online forums).

19      Courts have specifically recognized the public interest in preventing the enforcement

20  of foreign speech-restrictive orders. In *Google Inc. v. Equustek*, this Court found that the public

21  interest favored enjoining a Canadian global delisting order because enforcement "would

22  eliminate Section 230 immunity for service providers" and allow foreign nations to impose

23  their speech restrictions globally. 2017 WL 5000834, at *4 (N.D. Cal. Nov. 2, 2017). The same

24  public interests apply here with even greater force, as this case involves core political speech

1    about matters of public concern. *See also Yahoo! Inc.*, 433 F.3d at 1217 (public interest against

2    enforcing foreign content restrictions).

3            The precedential effect of this case also implicates the public interest. If Defendants

4    succeed in using an Australian court to silence a U.S. publisher, it will embolden other foreign

5    plaintiffs to pursue similar strategies. This would create a race to the bottom, where global

6    Internet speech is governed by the most restrictive regimes rather than the most protective. *See*

7    *Matal v. Tam*, 582 U.S. 218, 245-47 (2017) (preventing "a huge chilling effect on speech"

8    serves public interest); *see also Moody v. NetChoice*, 603 U.S. 707, 733-34 (2024) (public

9    interest in uniform online speech protections). The public interest demands that U.S. courts

10   stand as a bulwark against such efforts.

11           Finally, there is no countervailing public interest in enforcing a foreign order that

12   violates U.S. law. While preventing actual defamation might serve a public interest, Defendants

13   have made no showing under U.S. standards that KGE's speech is false or defamatory. Under

14   our constitutional system, the remedy for speech is more speech, not enforced silence. *See*

15   *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). The public interest

16   lies in preserving this marketplace of ideas, not in allowing foreign courts to shut down one

17   side of a public debate. *See Abrams v. United States*, 250 U.S. at 630 (Holmes, J., dissenting)

18   (truth emerges through competition of ideas).

19           **E. The Court Should Issue the Requested Injunction Without Bond**

20           Federal Rule of Civil Procedure 65(c) provides that a court may require the movant to

21   give security (a bond) in support of a preliminary injunction or TRO. However, the Court has

22   discretion to waive or reduce the bond requirement when there is no risk of monetary loss to

23   the enjoined party. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c)

24   invests the district court 'with discretion as to the amount of security required, if any.'"); *see*

1  *also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

2  2003) (waiving bond where no harm to defendant).

3      Courts routinely waive bond requirements in First Amendment cases, recognizing that

4  requiring security for the vindication of constitutional rights would itself chill protected

5  speech.[1]

6      Here, no bond should be required for multiple reasons:

7      First, Defendants will suffer no financial loss from being enjoined from violating U.S.

8  law. The injunction simply prevents enforcement of a foreign order that is already

9  unenforceable under the SPEECH Act. *See Connecticut General Life Insurance*, 321 F.3d at

10 882 (no bond required where defendant "would not be harmed" by injunction).

11     Second, requiring a bond would chill the exercise of First Amendment rights by

12 imposing a financial barrier to vindicating constitutional freedoms. This is particularly

13 problematic where, as here, the plaintiff is a non-profit community organization with limited

14 resources challenging well-funded corporate defendants. *See Doctor's Associates, Inc. v.*

15 *Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (bond requirement should not "deny citizens access to

16 judicial review of administrative actions").

17     Third, the public interest in protecting First Amendment rights outweighs any

18 speculative harm to Defendants. Courts have waived bonds where "the public interest...

19 favor[s] the issuance of an injunction." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th

20 Cir. 1999).

---

[1] *See Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right."); *see also Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (waiving where bond would deny access to judicial review). The Ninth Circuit has affirmed waiver of bond where "the balance of equities tips sharply in favor of the party seeking the injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009); *see also Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999) (waiving in public interest case).

1    Fourth, Defendants' unclean hands in alleged forum shopping and suing the wrong party

2    weigh against requiring Plaintiff to post security. *See Precision Instrument Mfg. Co.*, 324 U.S.

3    at 814 (unclean hands).

4    For these reasons, the Court should exercise its discretion to waive any bond

5    requirement, as courts routinely do in First Amendment cases where constitutional rights are

6    at stake and no monetary harm to defendants is likely.

7    **V. CONCLUSION**

8    For the foregoing reasons, Plaintiff Kurraba Group Exposed respectfully requests that

9    the Court grant the motion and issue a temporary restraining order and preliminary injunction

10    (and, upon final judgment, a permanent injunction) providing the following relief:

11    1. Enjoining Enforcement of the Australian Order in the U.S.: Defendants and anyone

12    in active concert with them, shall be restrained and enjoined from enforcing, attempting to

13    enforce, or otherwise giving any effect to the orders of the New South Wales, Australia court

14    (including the *ex parte* interim injunction issued on or about October 7, 2025, and any

15    subsequent orders in that case) in any court or jurisdiction of the United States. This includes

16    prohibiting Defendants from seeking recognition of the Australian orders in the U.S. or

17    presenting them to any U.S.-based person or entity as a basis to remove, de-index, or

18    suppress Plaintiff's content. This relief is necessary to prevent circumvention of the SPEECH

19    Act and First Amendment protections. *See* 28 U.S.C. § 4102; *Yahoo! Inc. v. La Ligue Contre*

20    *Le Racisme*, 433 F.3d 1199 (9th Cir. 2006).

21    2. Enjoining Further Censorship Actions Abroad that Impact U.S. Speech: Defendants

22    are further enjoined from taking any action in Australia or elsewhere to invoke or enforce the

23    Australian court's orders in a manner that would interfere with Plaintiff's publication of

24    content in the United States. In particular, Defendants shall not pursue contempt proceedings,

25    penalties, or new injunctions in the Australian courts against Google (or other U.S. entities)

1    for failure to comply with the Australian removal order, insofar as such non-compliance

2    occurs in accordance with U.S. law and this Court's orders. This anti-suit injunction is

3    appropriate where foreign proceedings threaten to undermine U.S. public policy and

4    constitutional rights. *See Paramedics Electromedicina Comercial, Ltda v. GE Medical*

5    *Systems Information Technologies, Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). Defendants must

6    not attempt an "end-run" around this injunction by re-litigating the same issues abroad to

7    induce censorship of Plaintiff's U.S.-hosted content.

8         3. Declaratory Relief: It is further declared that Plaintiff's publications at issue do not

9    violate U.S. defamation law and are protected speech under the First Amendment, and that

10   the Australian injunction and any resulting judgment are repugnant to the public policy of the

11   United States and unenforceable domestically pursuant to the SPEECH Act, 28 U.S.C. §

12   4102, Communications Decency Act, 47 U.S.C. § 230, and the First Amendment to the

13   United States Constitution. Such declaratory relief is appropriate to resolve the legal

14   uncertainty created by Defendants' forum shopping and to prevent future attempts to enforce

15   the foreign order. *See* 28 U.S.C. § 2201.

16        Such injunctive relief is narrowly tailored to prevent irreparable injury, uphold federal

17   law, and restore the parties to the appropriate status quo pending final resolution. It does not

18   interfere with the Australian court's proceedings beyond U.S. borders, but it ensures that

19   foreign censorship cannot be projected into the United States in contravention of Americans'

20   constitutional rights and U.S. public policy. The relief is consistent with principles of

21   international comity while maintaining the supremacy of U.S. constitutional protections

22   within our borders. All the requirements for a TRO and preliminary injunction are met, and

23   indeed, the public interest would be ill-served by any further delay in granting relief.  Each

24   day of delay perpetuates ongoing constitutional violations and emboldens further attempts to

25   circumvent U.S. free speech protections through foreign litigation. Plaintiff therefore requests

1    that the Court issue a TRO immediately, followed by a preliminary injunction after a noticed

2    hearing, and ultimately a permanent injunction in the same form upon entry of final

3    judgment.

4          The Court stands at a crossroads between two visions of online speech: one in which

5    the most restrictive regimes worldwide can silence American speakers through jurisdictional

6    gamesmanship, and another in which U.S. constitutional values protect the marketplace of

7    ideas from foreign censorship. Plaintiff respectfully urges the Court to choose the path of

8    freedom, to vindicate the principles embodied in the First Amendment and the SPEECH Act,

9    and to ensure that libel tourism finds no safe harbor in American courts.


Dated: October 30, 2025                    Respectfully submitted,

Derek S. Khanna (Cal. Bar No.
308563)
706 Tesoro Road
Monterey, CA 93940                         /s/*Derek S. Khanna*
Tel: (202) 643-248
Email: Derek.Khanna@gmail.com              _____
                                           Derek S. Khanna

Mark I. Bailen (D.C. Bar No. 459623),
*Pro Hac Vice Forthcoming*
Bailen Law
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Tel: (202) 656-0422
Email: mb@bailenlaw.com

April Mackenna White (N.Y. Bar No.
4799953), *Pro Hac Vice Forthcoming*
Bailen Law
100 Wall Street, Suite 1702
New York, NY 10005
Tel: (646) 397-3496
Email: mwhite@bailenlaw.com

*Attorneys for the Plaintiff*
*Kurraba Group Exposed*